**Charles PROVENCHER, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**DELL, INC., a corporation; BancTec, Inc., a corporation; Qualxserv LLC; Dell Catalog Sales, L.P., an entity; and Dell Products, L.P., an entity, Defendants.**

**NO. SA CV 05–878 CJC (ANx).**

United States District Court,
C.D. California,
Southern Division.

Jan. 3, 2006.

---

Brian R. Strange, Gretchen Carpenter, Strange and Carpenter, Randall S. Roths-child, Randall Rothschild Law Offices, Los Angeles, CA, for Plaintiff.

Jason Bergmann, Lawrence J. Gornick, Richard E. Elder, Paul Hastings Janofsky and Walker, San Francisco, CA, David M. Roberts, Steven F. Raspe, Roberts Raspe and Blanton, Aaron C. Gundzik, John W. Cotton, Cotton and Gundzik, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

CARNEY, District Judge.

### I. INTRODUCTION

Defendants Dell, Inc., Dell Catalog Sales, L.P., Dell Products, L.P., BancTec, Inc., and Qualxserv LLC (collectively "Dell") move to enforce their arbitration agreement with Plaintiff Charles Provencher and compel him to arbitrate his claims against them individually before the National Arbitration Forum ("NAF") instead of by way of this putative class action. Dell's motion to compel arbitration is GRANTED.[1] Mr. Provencher and Dell knowingly, voluntarily, and intelligently agreed to resolve their disputes through the NAF, which is without question an inexpensive, efficient, and convenient forum for resolving commercial disputes.

### II. BACKGROUND

On November 15, 2001, Mr. Provencher purchased a Dell Dimension computer with related servicing from Dell. (Pape Decl., ¶ 6.) Mr. Provencher made his purchase over the Internet subject to certain terms and conditions that were explicitly set

---

1. Because BancTec and QualxServ are Dell's assigns, Mr. Provencher's claims against them are also subject to arbitration. (Pape Decl., Exh. A, ¶ 12); *see also McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 482 (Tex.App.2001) (equitable estoppel prevents plaintiff from circumventing his ar-bitration agreement by suing the service providers on the same claims). Mr. Provencher did not contest the issue of whether BancTec and Qualxserv are proper parties subject to the arbitration agreement and, therefore, he has waived any objection to their joinder in the arbitration.

forth in a written contract entitled "Terms and Conditions Agreement" ("Agreement"). (Pape Decl., ¶ 4, Exh. A.)

The Agreement was a standard "approve-or-return" contract. If Mr. Provencher was not satisfied with his computer and the services that Dell rendered in connection therewith, or if he found any of the provisions of the Agreement unacceptable, he could return the computer to Dell within 30 days and cancel the Agreement. (*Id.*, ¶¶ 8, 9.) The Agreement was available for Mr. Provencher's review on Dell's website before, while, and after he ordered the computer and related services from Dell. (*Id.*, ¶¶ 5, 8.) Mr. Provencher also received two written copies of the Agreement: one inside the box containing his computer and the other on the back of the packaging slip which accompanied his computer. (*Id.*, ¶¶ 6, 8.) In his own words, Mr. Provencher conceded that the "terms of my warranty were in writing and found in many places such as the pre-sale advertising, my invoice, and the documentation that came with the computer which included the so called service contract." (Provencher Decl.,¶ 4.)

The Agreement had two provisions particularly relevant to this lawsuit. The first was a choice-of-law provision providing for the application of Texas law with respect to any dispute between the parties, and the second was an arbitration provision providing for individual arbitration of disputes before the NAF and waiving Mr. Provencher's right to proceed by way of class action. (*Id.*, Exh. A.) These two provisions were explicitly and conspicuously set forth in the Agreement. (*Id.*) Indeed, the Agreement contained the following preamble in capitalized, bolded, and underlined letters:

*PLEASE READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLI-GATIONS, AS WELL AS LIMITA-TIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. THIS DOCU-MENT CONTAINS A DISPUTE RES-OLUTION CLAUSE.*

(*Id.* (emphasis in original).)

Paragraph 12 of the Agreement contained the arbitration provision at the heart of this dispute:

Binding Arbitration. ANY CLAIM, DISPUTE, OR CONTROVERSY ... AGAINST DELL, its agents, employees, successors, assigns or affiliates (collectively for purposes of this paragraph "Dell") arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell's advertising, or any related purchase SHALL BE RESOLVED EX-CLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINIS-TERED BY THE NATIONAL ARBI-TRATION FORUM (NAF) ... The arbitration will be limited solely to the dispute or controversy between Customer and Dell ... PROVIDED, HOW-EVER, THAT THIS BINDING ARBI-TRATION REQUIREMENT DOES NOT APPLY TO CLAIMS AGAINST DELL ARISING UNDER THE AP-PLICABLE WRITTEN WARRANTY. SUCH CLAIMS MAY BE PURSUED IN ANY COURT OF COMPETENT JURISDICTION. [sic]

(*Id.* (emphasis in original).)

Apparently, Mr. Provencher was not satisfied with his computer and the services rendered by Dell. Interestingly enough, however, Mr. Provencher never exercised his right under the Agreement to return the computer and rescind the transaction. Nor did Mr. Provencher ever

file a claim with the NAF in accordance with the Agreement. Indeed, Dell was not aware of any problem with Mr. Provencher's computer or the services that it rendered until August of 2005, when Mr. Provencher filed this nationwide class action.[2] In his thirty-four page First Amended Complaint ("Complaint"), Mr. Provencher alleges that Dell breached its contractual and legal obligations to him and every other person in the entire United States who purchased a computer and related services from Dell in essentially six ways: (1) Defendants did not provide "next business day at-home" warranty repair service with a live technician to repair or replace defective computer systems under warranty even though they promised to do so; (2) Defendants did not provide "next business day" warranty replacement parts even though they promised to do so; (3) Defendants did not provide on site warranty service to fix computer problems unless a replacement part was needed even though they promised to do so; (4) Defendants did not provide warranty repair or replacement part service one business day after they received a broken notebook computer system by mail even though they promised to do so; (5) Defendants did not provide top quality, new replacement parts and components to fulfill their warranty obligations as promised but instead used recycled, used, or inferior parts and components; and (6) Defendants, as a business practice, overcharged customers for re-

placement parts. (Complaint, ¶ 2.) Mr. Provencher's Complaint alleges ten separate causes of action for breach of warranty, breach of contract, violation of a federal consumer protection statute, deceptive and unfair practices under state consumer protection law, fraud, and unjust enrichment. Mr. Provencher seeks on behalf of himself and the nationwide class millions of dollars in compensatory and punitive damages, as well as attorneys' fees. (Complaint, pp. 33–34.) Instead of filing an answer to Mr. Provencher's Complaint, Dell promptly filed this motion to compel him to arbitrate his claims individually with Dell before the NAF in accordance with the terms and conditions of the Agreement.

## III. ANALYSIS

This motion concerns the enforceability of the parties' agreement to arbitrate their disputes before the NAF and to waive Mr. Provencher's right to proceed by way of a nationwide class action. When addressing this issue, the Court is mindful of Congress' recent finding that there have been abuses of the class action device over the past decade that have adversely affected interstate commerce and unfairly punished responsible companies and businesses.[3] Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005). It was because of those abuses that Congress specifically enacted the Class Action Fairness Act and shifted many class actions to federal court.[4] *Id.*

---

**2.** Mr. Provencher originally filed his complaint in Orange County Superior Court on August 8, 2005. Dell removed the case to this Court on September 9, 2005, and Mr. Provencher filed his First Amended Complaint on September 30, 2005.

**3.** Specifically, Congress noted that abuses of the class action device have harmed class members with legitimate claims by limiting their recovery while awarding counsel large fees, harmed defendants that have acted responsibly, adversely affected interstate com-

merce, and undermined public respect for the judicial system. Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005).

**4.** The purposes of the Class Action Fairness Act "are to (1) assure fair and prompt recoveries for class members with legitimate claims; (2) restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction; and (3) benefit society by en-

■ The Court is also very mindful of Congress' directive to reverse the long standing judicial hostility to arbitration agreements "and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The Federal Arbitration Act ("FAA") enacted by Congress establishes a liberal policy favoring arbitration agreements and requires courts to rigorously enforce private arbitration agreements according to their terms. *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Only in those limited circumstances where the arbitration agreement at issue is unenforceable on a ground that exists at law or equity for any contract, such as fraud, duress, or unconscionability, can a court strike down an arbitration agreement. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936–37 (9th Cir.2001), *cert. denied*, 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002). With proper deference to these Congressional findings and directives, the Court now turns to the issue of the enforceability of the parties' arbitration provision and class action waiver.

## A. Texas Law Governs This Dispute

■ The Court must first determine the appropriate state law that governs the issue of whether the parties' arbitration provision and class action waiver are enforceable. The parties' Agreement provides for Texas law to govern that issue.[5] (Pape Decl., Exh. A.) The parties agree that under California choice of law rules, their choice of Texas law must be respected unless the Court finds that enforcing Texas law would violate a fundamental policy of California.[6] *Discover Bank v. Superior Court*, 36 Cal.4th 148, 173–74, 30 Cal. Rptr.3d 76, 113 P.3d 1100 (2005); *see also Ticknor*, 265 F.3d at 937 ("Federal Courts sitting in diversity look to the law of the forum state in making a choice of law determination."). The Court finds no such violation here.

In *Discover Bank*, the California Supreme Court made it clear that there is no blanket policy in California against class action waivers in the consumer context. 36 Cal.4th at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The California Supreme Court held that class action waivers were only unenforceable in those limited circumstances where the "waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Id.* at 162–63, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Mr. Provencher has put forth no evidence to suggest that this case involves such a small amount of money and fraudulent

couraging innovation and lowering consumer prices." Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005).

5. The parties' choice of law forum must have a substantial relationship to the parties or their transaction or there must be a reasonable basis for the parties' choice. *Discover Bank v. Superior Court*, 36 Cal.4th 148, 173–74, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). Here, Texas clearly has a substantial relationship to the parties' transaction since Dell's

principal place of business is in Texas and it sells its products from Texas. (Pape Decl., ¶ 2); *see also Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 467, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992).

6. If Texas law is contrary to a California fundamental policy, it still will be the applicable law unless California has a materially greater interest in the dispute than Texas. *Discover Bank*, 36 Cal.4th at 173–74, 30 Cal. Rptr.3d 76, 113 P.3d 1100.

avoidance of liability on the part of Dell. Indeed, the record before the Court suggests the complete opposite.

Mr. Provencher purchased a Dell personal computer, which is not an essential consumer good. Mr. Provencher could easily go about his affairs without a Dell computer. *Cf. Circuit City Stores v. Mantor*, 335 F.3d 1101 (9th Cir.2003) (holding that Circuit City's arbitration provision was unconscionable where plaintiff was forced to accept an arbitration agreement six years into his employment or lose his job). Mr. Provencher also could have purchased a personal computer from numerous other retailers or manufacturers, but he instead purchased one from Dell, presumably because of its reputation for selling high quality computers at reasonable, competitive prices.

Moreover, Mr. Provencher's claims do not involve a small amount of money. Although Mr. Provencher does not state the specific amount of damages he is seeking for himself and the nationwide class, he clearly is seeking to recover a significant amount of money. Mr. Provencher spent over $1600 for the Dell computer, including more than $250 for Dell's extended service warranty. (Pape Decl., Exh. B.) He purports to represent a nationwide class consisting of over 500,000 members. (Complaint, ¶ 16.) He alleges a vast array of warranty, contract, tort, and statutory claims. He seeks compensatory and punitive damages, as well as attorneys' fees. (Complaint, pp. 33–34.) Obviously this case involves a significant amount of money, most likely hundreds of millions of dollars.[7]

Finally, and most significantly, the NAF is an inexpensive, convenient, and efficient forum for Mr. Provencher to resolve his disputes with Dell. It certainly is not a device that Dell can use to escape liability for alleged wrongful conduct. *Cf. Ingle v. Circuit City Stores*, 328 F.3d 1165, 1173–79 (9th Cir.2003) (holding that arbitration provision in employment context was unconscionable where only employee was forced to arbitrate her claims, statute of limitations was limited, class action method was precluded, remedies were limited, costs and fee splitting arrangement were burdensome for employee, and employer had unilateral power to terminate or modify the agreement). Under the NAF, Mr. Provencher has a say in selecting the arbitrator. (Defendants' Request for Judicial Notice in Support of Reply Brief, Exh. 6.) His filing fee is at most $35. (*Id.*, Exh. 1.) Dell pays all other mandatory fees, including a commencement and administrative fee. (*Id.*) Mr. Provencher can file a claim simply by mail or online. (*Id.*, Exh. 3.) If he proceeds by mail, Mr. Provencher can use a form available from the NAF or draft his own document. (*Id.*) If Mr. Provencher elects to proceed on the papers, he is not required to pay any more fees, meaning that he could prosecute his entire claim for only $35. (*Id.*, Exh. 1.) If he cannot afford any fees, Mr. Provencher can request an indigent fee waiver through a simple process that need not be disclosed to the other parties. (*Id.*, Exhs. 2, 4.) If Mr. Provencher prefers an in-person hearing, one will be scheduled near his residence in California, instead of Dell's home office in Texas.[8] (*Id.*, Exh. 1.) As Justice

---

**7.** Multiplying the approximate value of the computer ($1600) by the approximate number of class members (500,000) equals $800,000,000. Multiplying just the approximate value of the warranty service ($250) by the approximate number of class members equals $125,000,000. The proper amount of damages likely falls somewhere in between

these two figures, but that does not include the punitive damages, treble damages, and attorneys' fees Mr. Provencher also seeks. (Complaint, pp. 24, 33–34.)

**8.** If Dell were to select a participatory hearing, it would pay the entire cost ($150) of the session. (Defendants' Request for Judicial

Ginsburg of the United States Supreme Court so aptly noted, the NAF has developed "models for fair cost and fee allocation." [9] *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 95 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (Ginsburg, J., concurring in part and dissenting in part).

The facts of this case bear absolutely no resemblance to those that the California Supreme Court found so troubling in *Discover Bank*. In that case, the plaintiff credit cardholder alleged that Discover Bank had a deceptive practice of representing to cardholders that late payment fees would not be assessed if payment was received by a certain date, when, in actuality, the fees were assessed if payment was received after 1:00 p.m. on that date, thereby leading to minimal damages of approximately $29 as to each individual credit cardholder. *Discover Bank*, 36 Cal.4th at 152, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The plaintiff credit cardholder sought to pursue classwide arbitration, but his cardholder agreement with Discover Bank forbid classwide arbitration. *Id.* The California Supreme Court found that Discover Bank had abused its superior bargaining power to carry out a scheme through class action waiver to deliberately cheat large numbers of consumers out of individually small sums of money. *Id.* at 153, 30 Cal.Rptr.3d 76, 113 P.3d 1100. The California

Supreme Court noted a lower court's finding that Discover Bank inserted the class action waiver in the cardholder agreement because it realized that few customers would take the time and trouble of pursuing such a small claim individually. *Id.*, at 159, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Discover Bank, by design, was granting itself both a license to push the boundaries of good business practices to their furthest limits and immunity from any wrongdoing. Not surprisingly, the California Supreme Court held that the class action waiver in the cardholder agreement was an exculpatory provision in violation of California public policy. *Id.* at 162–63, 30 Cal. Rptr.3d 76, 113 P.3d 1100.

In contrast to the arbitration provision and class action waiver involved in *Discover Bank*, the parties' arbitration provision and class action waiver here do not exempt Dell from the consequences of its alleged wrongdoing. *See* CAL. CIV.CODE § 1668 (Deering 2005). They only limit the means by which Mr. Provencher can enforce his substantive rights against Dell. Accordingly, the parties' arbitration provision and class action waiver do not violate a fundamental policy of California, and, therefore, the Court will analyze the enforceability of the parties' arbitration provision and class action waiver under Texas law in accor-

---

Notice in Support of Reply Brief, Exh. 1.) If Mr. Provencher were to select a participatory hearing session, he would be responsible for paying half the cost of the session ($75) while Dell would pay the other half. (*Id.*) Again, if Mr. Provencher cannot afford the applicable fees, he can request an indigent waiver. (*Id.*, Exhs. 2, 4.)

9. National arbitration organizations like NAF not only provide a fair and inexpensive model for consumers, they also potentially benefit consumers by controlling companies' costs. As articulated by the U.S. Supreme Court in a similar context, it is likely that consumers actually benefit in the form of less expensive

computers reflecting Dell's savings from inclusion of the arbitration provision in its contracts. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("[I]t stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued."). Similarly, one of Congress' express purposes behind the Class Action Fairness Act was to "benefit society by encouraging innovation and lowering consumer prices." Class Action Fairness Act of 2005, Pub.L. No. 109–2, § 2, 119 Stat. 4 (2005).

dance with the choice of law provision in the parties' Agreement.[10]

## B. The Arbitration Provision and Class Action Waiver Are Not Unconscionable Under Texas Law

■■■ A citizen's freedom of contract is a paramount public policy of Texas. *See Wood Motor Co. v. Nebel,* 150 Tex. 86, 238 S.W.2d 181, 185–86 (1951). Under Texas law, a court is not permitted to interfere with the parties' contract just because the court believes the contract is unwise and unfair, or because one of the parties to the contract now wishes a provision did not exist. *See id.* The Texas Supreme Court gave Texas courts clear direction on how to approach legal challenges to contracts:

> [I]f there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice. Therefore you have this paramount public policy to consider—that *you are not lightly to interfere with this freedom of contract.*

*Id.* at 185 (emphasis added).

■■■ An individual's freedom of contract, however, is not limitless under Texas law. If the complaining party can show that the contract is unconscionable, a Texas court will not enforce it. But this showing is a difficult one for the complaining party to make. *See AutoNation U.S.A. Corp. v. Leroy,* 105 S.W.3d 190, 198 (Tex. App.2003). To be unenforceable under Texas law, the contract must be both procedurally and substantively unconscionable. *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex.2002). A contract is procedurally unconscionable if a party has "no real choice" but to enter into the contract. *Dillee v. Sisters of Charity,* 912 S.W.2d 307, 309 (Tex.App.1995). A contract is substantively unconscionable if it is so one-sided that "no man in his senses and not under a delusion would enter into [it] and which no honest and fair person would accept." *Blount v. Westinghouse Credit Corp.,* 432 S.W.2d 549, 554 (Tex.Civ.App.— Dallas 1968).

*AutoNation* is illustrative of how Texas courts are unwilling to strike down an arbitration provision and class action waiver on the ground of unconscionability. 105 S.W.3d 190. In *AutoNation,* the plaintiff brought a putative class action on behalf of persons who purchased used cars from the defendant. *Id.* at 193–94. The defendant moved to arbitrate the plaintiff's claims under an arbitration provision on the back of the plaintiff's standard form used car purchase agreement, which required arbitration of "[a]ny controversy or claim arising out of or relating to" the agreement. *Id.* at 194. The plaintiff argued that the arbitration agreement was procedurally and substantively unconscionable. *Id.* at 195.

---

10. Since the Court concludes that the arbitration provision and class action waiver are not contrary to a California fundamental policy, it need not determine whether California has a materially greater interest than Texas regarding the dispute at issue. *Discover Bank,* 36 Cal.4th at 174, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Nonetheless, the record is clear that California does not have a materially greater interest than Texas since all but one of Mr. Provencher's state law claims were brought under Texas law, on behalf of residents of all fifty states, and against a company with its principal place of business in Texas. *See Discover Bank v. Superior Court,* 134 Cal.App.4th 886, 36 Cal.Rptr.3d 456 (2005). Although California does have a strong interest in protecting its consumers, Mr. Provencher is attempting to assert claims on behalf of every state's consumers, not just California's. *See id.* at 895, 36 Cal.Rptr.3d 456. Clearly, "California has no greater interest in protecting other states' consumers than other states have in protecting California's." *Id.*

The *AutoNation* court rejected the plaintiff's argument that the arbitration provision and class action waiver were procedurally unconscionable because they were hidden in a form contract, explaining that an adhesion contract is not inherently procedurally unconscionable and that there is *no conspicuousness requirement* under Texas law. *Id.* at 198–99. The *AutoNation* court then went on to reject the plaintiff's argument that the arbitration provision and class action waiver were substantively unconscionable:

> [Plaintiff] also contends that enforcement of the arbitration provision is substantively unconscionable because prohibiting class treatment of small-damage consumer claims is fundamentally unfair. If we enforce the arbitration clause, [plaintiff] argues that consumers like her will be discouraged from seeking legal redress on an individual basis, while businesses like [defendant] will be encouraged to engage in illegal conduct because they will not have to be concerned about potential class actions. This assumes that the right to proceed on a class-wise basis supercedes a contracting party's right to arbitrate under the FAA. However, the primary purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate and to ensure that private agreements to arbitrate are enforced according to their terms. The Texas Supreme Court has made it clear that the FAA is part of substantive law of Texas, and has stressed that "procedural devices," such as Rule 42's provision for class actions,

"may not be construed to enlarge or diminish any substantive rights or obligations of any parties to any civil action." Accordingly, there is no entitlement to proceed as a class action.

*Id.* at 199–200.

Despite Texas' strong public policy of enforcing its citizens' contracts as written, Mr. Provencher nevertheless contends that the arbitration provision and class action waiver in his contract with Dell are unconscionable and, therefore, unenforceable. Mr. Provencher is mistaken. The parties' arbitration provision and class action waiver are neither procedurally nor substantively unconscionable under Texas law.[11]

■ The parties' arbitration provision and class action waiver are not procedurally unconscionable under Texas law because Mr. Provencher knowingly and voluntarily agreed to arbitrate his disputes with Dell and waive his right to proceed by way of class action. The plain and clear terms of the arbitration provision and class action waiver were disclosed not only on Dell's website before, during, and after Mr. Provencher placed his online order for the computer, but also in the sales contract and packaging slip that accompanied the computer when it was delivered to him. Although Mr. Provencher had 30 days to return the computer and not accept the arbitration provision and class action waiver, Mr. Provencher decided to keep the computer and be bound by those provisions. Mr. Provencher was never pressured or bamboozled by Dell into agreeing to the arbitration provision and class action waiver.[12] He made his own conscious

11. Indeed, several courts have recently upheld under Texas law Dell's exact arbitration provision and class action waiver at issue in this case. *See Stenzel v. Dell, Inc.*, 870 A.2d 133 (Me.2005); *Hubbert v. Dell Corp.*, 359 Ill.App.3d 976, 296 Ill.Dec. 258, 835 N.E.2d 113 (2005); *Falbe v. Dell Inc.*, 2004 WL 1588243, 2004 U.S. Dist. LEXIS 13188 (N.D.Ill.2004); *Dell, Inc. v. Muniz*, 163 S.W.3d 177 (Tex.App.2005).

12. Notably, the arbitration provision here was part of the Agreement from the beginning. In *Discover Bank*, in contrast, the parties' agreement did not contain an arbitration clause when plaintiff's credit card was issued in 1986. 36 Cal.4th at 153, 30 Cal.Rptr.3d 76, 113 P.3d 1100. Rather, Discover Bank did not add the arbitration clause until thirteen years later, in 1999. *Id.; see also Mantor*, 335 F.3d 1101 (holding Circuit City's employ-

decision to do a deal with Dell and he should not be permitted to renege on it now.

■ Moreover, the parties' arbitration provision and class action waiver are not substantively unconscionable under Texas law as they have features that are very beneficial to Mr. Provencher. His filing fee with the NAF is only $35 or less, and if he decides he wants an in-person hearing before the arbitrator, one will be scheduled near his residence in California, instead of Dell's home office in Texas. Clearly, arbitration before the NAF is an inexpensive, efficient, and convenient method for Mr. Provencher to resolve his disputes with Dell. In any event, it is certainly not so one-sided as to be unconscionable from Mr. Provencher's standpoint.

Simply put, Mr. Provencher made a deal with Dell to arbitrate his disputes with Dell before the NAF and waive his right to proceed by way of class action. There is no legitimate reason under Texas law for not holding Mr. Provencher to that deal. He must arbitrate his claims before the NAF and he cannot proceed by way of this class action.[13]

## IV. CONCLUSION

For the foregoing reasons, Dell's motion to compel arbitration and stay the proceedings is granted.

ee arbitration agreement unconscionable where employee who had been working there for six years was forced to accept the agreement or "have no future with Circuit City").

13. Although the parties' arbitration provision has an exception for disputes involving the hardware of the Dell computer, none of Mr. Provencher's claims fall within that exception. All of his claims involve Dell's advertising or its service contracts. In addition, Mr. Provencher argues that his California Legal Remedies Act ("CLRA") claim for injunctive relief is inarbitrable based on the California Supreme Court's holding in *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 90 Cal. Rptr.2d 334, 988 P.2d 67 (1999). However, the Ninth Circuit has more recently held that because the CLRA "is not a law of 'general applicability,'" it is preempted by the Federal Arbitration Act. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir.2003), *cert denied*, 540 U.S. 811, 124 S.Ct. 53, 157 L.Ed.2d 24 (2003). Hence, all of Mr. Provencher's claims are subject to arbitration.