1999-NMCA-040

975 P.2d 361

**Charles MONETTE and Donald Monette, Plaintiffs–Appellees,**

**v.**

**Edward R. TINSLEY, III, K–Bob's Capital Resource Group, Ltd., and K–Bob's USA, Inc., Defendants–Appellants.**

**No. 19310.**

Court of Appeals of New Mexico.

Jan. 20, 1999.

Mark A. Filosa, Filosa & Filosa, Truth or Consequences, for Appellees.

Joel T. Newton, Michael I. Garcia, Miller, Stratvert & Torgerson, P.A., Las Cruces, for Appellants.

## OPINION

PICKARD, Judge.

{1}    Defendants appeal the trial court's denial of their motion to compel arbitration of Plaintiffs' contract claims against them. We affirm in part and reverse in part.

## BACKGROUND

{2} K–Bob's USA, Inc.; its president, Edward R. Tinsley, III; and K–Bob's Capital Resource Group, Ltd. (Defendants) sell and assist in the management of restaurant franchises. Defendants entered into a Manager–Proprietor Agreement with Plaintiff Donald Monette. Plaintiffs, Donald and Charles Monette, both signed a promissory note for $62,500 that was attached to the agreement. According to the agreement, Donald Monette would serve as manager and proprietor of a K–Bob's restaurant in Socorro, New Mexico.

{3} Several months later, Donald Monette resigned, without notice, from his position as manager of the restaurant. Defendants then terminated the agreement with Donald Monette. According to Plaintiffs, however, Defendants had previously assured them that if Donald Monette did not work out as manager, another member of the Monette family would be allowed to take over for him.

{4} Plaintiffs informed Defendants by letter of their intention to bring suit if the issues surrounding the termination of the contract could not be resolved. In that same letter, Plaintiffs also raised the arbitration issue, noted the contract provision that required disputes to be arbitrated, and indicated their hope to settle the matter. Initial settlement discussions were not successful.

{5} Donald and Charles Monette filed a complaint against Defendants, alleging breach of contract, misrepresentation, and money due. They sought $62,500 that they had paid on the promissory note, plus interest, as well as damages, costs, and attorney fees. Specifically, Plaintiffs alleged that Defendants breached the contract by failing to provide them support, vacation time, and information, as well as failing to pay profits as agreed and failing to pay or provide an assistant manager. They included in their complaint the allegation that Defendants breached the contract by refusing to allow Donald Monette to return to work and by failing to abide by their pre-signing representation that, if necessary, a family member would be allowed to replace Donald Monette as manager.

{6} Defendants then filed a motion to dismiss, abate, and compel arbitration, in lieu of filing an answer to Plaintiffs' complaint. The trial court denied the motion, and Defendants appeal.

## DISCUSSION

{7} This Court reviews conclusions of law *de novo*. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). We will reverse if the trial court's findings and conclusions cannot be sustained either by evidence or permissible inferences drawn therefrom. *See Reichert v. Atler*, 117 N.M. 628, 631, 875 P.2d 384, 387 (Ct.App.1992), *aff'd*, 117 N.M. 623, 875 P.2d 379 (1994). Absent ambiguity, a contract's meaning is a question of law, rather than a question of fact. *See Carlsberg Management Co. v. State, Taxation & Revenue Dep't*, 116 N.M. 247, 251, 861 P.2d 288, 292 (Ct.App.1993).

{8} The trial court denied Defendants' motion to dismiss, abate, and compel arbitration based on its conclusions that: (1) Plaintiff Charles Monette was not bound to the arbitration provision of the contract, (2) the contract's arbitration provision was ambiguous and unfair and should be construed against Defendants, and (3) Plaintiffs' misrepresentation was not a dispute about the contract.

### Charles Monette Was Not a Party To The Contract

{9} The trial court properly concluded that Plaintiff Charles Monette was not a party to the contract. Charles Monette was a guarantor of the $62,500 promissory note that accompanied the contract, but a mere witness to the underlying contract itself. It is commonly held that a guarantor or surety is not a party bound to the terms of the underlying contract. *See, e.g., Washington Int'l Ins. Co. v. Superior Court*, 62 Cal. App.4th 981, 73 Cal.Rptr.2d 282, 285 (1998) (stating rule that surety is not bound to terms outside the surety agreement).

{10} A guarantor who is not a signatory to a contract is generally not bound by that contract's arbitration clause. *See, e.g., Asplundh Tree Expert Co. v. Bates*, 71

F.3d 592, 595 (6th Cir .1995); *see generally 1 Domke on Commercial Arbitration* § 10:07 (Gabriel M. Wilner & Nuzhat Hafeez, eds., rev. ed.1998) (discussing the effect of arbitration provisions on guarantors and sureties).

■ {11}　There are, however, exceptions to the general rule when the note or guaranty incorporates the underlying contract by reference. *See United States Fidelity & Guar. Co. v. West Point Constr. Co.,* 837 F.2d 1507, 1508 (11th Cir.1988) (holding incorporation by reference sufficient to bind surety); *see also Grundstad v. Ritt,* 106 F.3d 201, 204–05 (7th Cir.1997) (concluding that absent language in the guaranty specifically stating that the guarantor would be bound to arbitration, he was not to be bound as a matter of law). The note in this case bears no indication that the contract was incorporated by reference or otherwise suggested that Charles Monette, as guarantor, intended to be bound to arbitration. Some cases also make reference to the "inextricably interwoven" approach, pursuant to which a guarantor may be required to arbitrate if the guarantee is inextricably interwoven with the underlying contract. *See Scinto v. Sosin,* 51 Conn. App. 222, 721 A.2d 552, 559 (1998). Even assuming that extrinsic evidence could show the requisite degree of interweave, Defendants presented no evidence to the trial court from which it could have found the two documents inextricably interwoven. Defendants presented only the two documents, and no testimony concerning the circumstances of their negotiation or their signing.

{12}　Admittedly, the result that Charles Monette is free to proceed in litigation against Defendants while his brother is bound to arbitrate the same claims is awkward. However, Defendants offer no reason why this case is so exceptional that Charles Monette should be bound by the arbitration provision, although he may in fact be bound by any arbitration award. *See Domke, supra.* Therefore, the remaining issues in this opinion about the application of the arbitration provision impact only Donald Monette's remedy in this case.

## The Arbitration Provision Was Not Ambiguous or Unfair

■■ {13}　A contract is ambiguous if it is reasonably and fairly susceptible to different constructions. *See Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). Absent the presentation of other evidence, the trial court resolves ambiguity by interpreting the contract using accepted canons of construction and traditional rules of grammar and punctuation. *See id.* at 782, 845 P.2d at 1236.

■ {14}　The trial court concluded that the arbitration provision was ambiguous. In support of this conclusion, Plaintiffs claim that "[t]he ambiguities in the contract speak for themselves," and argue that, under the arbitration provision, it is unclear whether Plaintiffs initiated arbitration proceedings. We disagree.

{15}　The arbitration provision, Paragraph 7.4 of the contract, reads, in pertinent part:

> All disputes between the parties which are not settled amicably are to be resolved by binding arbitration. Such arbitration shall be submitted to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), and judgment upon the award rendered by a single arbitrator may be entered in any court having jurisdiction over the matter.... The failure of MANAGER to initiate arbitration proceedings within thirty (30) days after the sending of a notice of termination by K–BOB'S shall be deemed a waiver of MANAGER's right to arbitration.

{16}　Plaintiffs contend that the provision was ambiguous as to how the arbitration process was to be initiated. Plaintiffs also argue that the provision was ambiguous because it did not set out the procedure for arbitration. However, the provision referenced the Commercial Arbitration Rules of the American Arbitration Association as the guiding substantive and procedural rules for the arbitration. Not only is this reference not ambiguous, but such references appear to be commonplace in arbitration provisions. *See, e.g., Board of Educ., Taos Mun. Schs.*

*v. The Architects, Taos,* 103 N.M. 462, 464, 709 P.2d 184, 186 (1985) (quoting arbitration provision that referenced the Construction Industry Arbitration Rules); *see also* 16 Samuel Williston, *A Treatise on the Law of Contracts* § 1918B (Walter H.E. Jaeger, 3d ed. 1976 & Supp.1998) (including the governing arbitration rules in corresponding form for drafting an arbitration provision).

{17} By focusing on the contract specifics, however, the parties fail to address the dispositive issue. Paragraph 7.4 sufficiently evinces the intent of the parties to submit disputes to arbitration. That intent is undisputed by the parties. Even if there were ambiguity in the specific rules by which arbitration was to be initiated or conducted, it would not render the arbitration provision inapplicable, but merely subject to interpretation in accordance with the customary practices of the industry. *See Mark V, Inc.,* 114 N.M. at 781, 845 P.2d at 1235 (applying a contextual approach to contract interpretations); *C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 511–12, 817 P.2d 238, 245–46 (1991) (holding that contract ambiguities can be interpreted in light of relevant trade usage and practices). Although these terms are borrowed from the Uniform Commercial Code, we have not limited their application merely to the interpretation of contracts for sales and leases of goods. *See State ex rel. State Highway & Transp. Dep't. v. Garley,* 111 N.M. 383, 390, 806 P.2d 32, 39 (1991) (extending some U.C.C. provisions to all contracts); *see also* NMSA 1978, §§ 55–1–205 (1968), 55–2–102 (1961) (sales of goods), 55–2A–102 (1992), and 55–2A–103(1)(j) (1993) (lease of goods).

{18} The trial court also concluded that the contract was unfair, because Plaintiffs' remedies appeared to be more limited than Defendants' remedies. The contract specified that arbitration would be considered waived by Plaintiffs thirty days from termination of the contract, but had no similar provisions for Defendants. Also, the contract allowed Defendants to seek equitable relief during the pendency of arbitration, but made no comparable provision for Plaintiffs. On appeal, Plaintiffs argue in support of the trial court's conclusion, claiming that the pro-

vision constituted substantive unconscionability.

{19} When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable. *See Garley,* 111 N.M. at 389–90, 806 P.2d at 38–39; *see also Guthmann v. La Vida Llena,* 103 N.M. 506, 511, 709 P.2d 675, 680 (1985). However, the threshold for such a holding is very high, as the "terms must be such as, 'no man in his senses and not under delusion would make on the one hand, and … no honest and fair man would accept on the other.'" *Id.* (quoting *In re Friedman,* 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (1978)).

{20} The terms here, while imbalanced, did not rise to a level of unconscionability. Both parties were bound to resolve disputes through arbitration. The contract provided for information-sharing by Defendants regarding the prospects of the restaurant's success prior to Plaintiffs' acquisition of interest. According to Paragraph 3.3, Defendants also were to pay all net operating losses from the time of opening until December 31, 1995, although Paragraph 4.3 allows Defendants to terminate the contract if Plaintiffs fail to break even or turn a profit from opening date until that time. Plaintiffs purchased only a 25% interest in the net profits and losses of the restaurant, leaving Defendants ultimately responsible for the majority of the investment in the franchise. Therefore, because Defendants appeared to assume a larger portion of the risk, it did not rise to the extreme of unconscionability for Defendants to preserve equitable remedies and require that Plaintiffs timely submit any claims to arbitration.

### The Misrepresentation Claim Did Relate To The Contract

{21} The trial court concluded that Plaintiffs' claim of misrepresentation was not a dispute about the contract, and therefore fell outside the arbitration provision. Plaintiffs' complaint claimed the specific misrepresentation that Defendants made assurances that if Donald Monette proved unsuccessful as manager, then another of his family could replace him. Defendants, however, termi-

nated the contract upon Donald Monette's resignation. In their complaint, Plaintiffs appeared to consider the misrepresentation to be a basis for claiming a breach of the contract, while in their response to the motion to compel arbitration, Plaintiffs appeared to consider the misrepresentation to be a basis for avoiding both arbitration and the contract.

{22} When parties agree to submit their disputes to arbitration, this applies to "any potential claims or disputes arising out of their relationships by contract or otherwise." *K.L. House Constr. Co. v. City of Albuquerque*, 91 N.M. 492, 494, 576 P.2d 752, 754 (1978). The dispute over assurances that another family member could replace Donald Monette as manager arose from the parties' relationship by contract, even if the assurances occurred in anticipation of the contract. *See id.* (holding that disputes arising after the completion of contractual obligation were reasonably related to the contract and subject to arbitration). Plaintiffs' misrepresentation claim clearly relates to the contract, and thus the arbitration provision would apply, unless there are legal or equitable grounds for revoking the contract. *See* NMSA 1978, § 44–7–1 (1971).

{23} To the extent that Plaintiffs are claiming fraud in the inducement of the contract due to the specific misrepresentation alleged, we acknowledge that such a claim is not appropriate for arbitration. *See Shaw v. Kuhnel & Assoc., Inc.*, 102 N.M. 607, 609, 698 P.2d 880, 882 (1985). Our Supreme Court has clearly held that "[i]t is for a court to determine issues of fraud in the inducement, not an arbitrator." *Id.* While the intent of Plaintiffs' complaint appeared to claim a breach of the contract, the allegation of misrepresentation was sufficiently specific to satisfy rules of pleading. *See Maxey v. Quintana*, 84 N.M. 38, 40, 499 P.2d 356, 359 (Ct.App.1972). By the time of the motion to compel arbitration, Plaintiffs' relied on the allegation of misrepresentation specifically to avoid the arbitration provision by claiming fraud in the inducement. On remand, the trial court shall first determine if such fraud existed, and if not, the remaining issues should proceed to arbitration. *See Shaw*, 102 N.M. at 609, 698 P.2d at 882.

## CONCLUSION

{24} We affirm in part and reverse in part. The trial court erred by concluding that the arbitration provision was ambiguous and unfair and that the misrepresentation claim did not in any way relate to the contract. The trial court was correct, on the showing made below, in concluding that Charles Monette was not bound by the arbitration provision of the contract. To the extent that Plaintiffs appear to be claiming fraud in the inducement, however, that claim cannot be settled through arbitration. We remand to the trial court to determine whether Defendants committed fraud in the inducement, and if so, to provide relief accordingly. In the absence of a determination of such fraud, all of Donald Monette's remaining claims are properly within the arbitration provision and should be resolved by arbitration. Charles Monette's claims are properly before the trial court at this time.

{25} **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.