165 P.3d 328 (2007)
2007-NMCA-087
Robert FISER, individually, and on behalf of a class of similarly-situated persons, Plaintiff-Appellant,
v.
DELL COMPUTER CORPORATION, a/k/a Dell, Inc., Defendant-Appellee.
No. 25,862.
Court of Appeals of New Mexico.
April 30, 2007.
Certiorari Granted June 26, 2007.
*330 Morgan Law Office, Limited, Ron Morgan, Whitney Buchanan, P.C., Whitney Buchanan, Albuquerque, NM, Feazell & Tighe, LLP, Austin Tighe, Austin, TX, Wallace and Graham, P.A., Robert Perkins, Salisbury, NC, for Appellant.
Reeves & Brightwell LLP, Kim Brightwell, Paul Schlaud, Austin, TX, Rodey, Dickason, Sloan, Akin & Robb, P.A., Edward Ricco, Leslie McCarthy Apodaca, Albuquerque, NM, for Appellee.
Certiorari Granted, No. 30,424, June 26, 2007.

OPINION
ROBINSON, Judge.
{1} Plaintiff Robert Fiser (Fiser) appeals an order staying his class action complaint for breach of contract, statutory violations, and equitable relief against Defendant Dell Computer Corporation, a/k/a Dell, Inc. (Dell), and compelling arbitration. We affirm.
*331 I. FACTUAL AND PROCEDURAL BACKGROUND
{2} Fiser ordered a Dell Dimension 4600 computer from Dell's website on November 13, 2003. After receiving the computer, Fiser determined that the amount of memory was less than what was represented on the website. On July 8, 2004, Fiser filed a putative class action suit, alleging that Dell's website contained misrepresentations and omissions about the amount of storage capacity or memory in its computers. Fiser stated claims for breach of contract, breach of express and implied warranty, unjust enrichment, unfair trade practices, false advertising, and equitable and declaratory relief.
{3} Dell moved to stay the district court action and to compel arbitration of Fiser's claims. In its motion, Dell alleged that the parties had agreed to arbitrate based upon the arbitration provision contained in the written terms and conditions that accompanied the purchase of Fiser's computer. The terms and conditions, including the arbitration provision, are set forth as hyperlinks on the website that Fiser used to order the computer. Dell sent a confirmation and an acknowledgment of Fiser's online order by electronic mail. Both the confirmation and the acknowledgment advised Fiser that his purchase was subject to the terms and conditions of sale, and provided a hyperlink to access those terms and conditions. Dell shipped the computer on the same day it was ordered. Included in the shipment was a written copy of Dell's terms and conditions.
{4} Fiser opposed arbitration, contending that he never agreed to arbitrate, and that the arbitration provision contained in the terms and conditions is unconstitutional and/or unconscionable. After additional briefing by both parties and two hearings, the district court granted Dell's motion, and entered an order referring all of Fiser's claims to arbitration. This Court then granted Fiser's application for interlocutory appeal. We provide additional pertinent facts throughout the Opinion.
II. STANDARD OF REVIEW
{5} The question of whether an agreement to arbitrate is valid must be decided by the district court, and it is governed by state contract law. See Santa Fe Techs., Inc. v. Argus Networks, Inc., 2002-NMCA-030, ¶ 52, 131 N.M. 772, 42 P.3d 1221; see DeArmond v. Halliburton Energy Servs., Inc., 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573 (stating that "[w]hether a valid contract to arbitrate exists is a question of state contract law"). However, state laws or policies that are "specifically hostile to arbitration agreements are preempted by the FAA [Federal Arbitration Act]." Salazar v. Citadel Commc'ns Corp., 2004-NMSC-013, ¶ 8, 135 N.M. 447, 90 P.3d 466 (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).
{6} Contrary to Dell's contentions, the district court did not enter findings and conclusions, nor did it take any evidence beyond review of the parties' affidavits and attachments thereto. Therefore, it decided as a matter of law that the parties entered into an arbitration agreement. See DeArmond, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573. In reviewing the district court's decision to compel arbitration, we apply the same de novo standard of review used when reviewing a grant of summary judgment. Id. ("We review de novo the grant of the motion to compel arbitration in the same manner we would review a grant of a summary judgment motion. We may reverse the order to compel arbitration if we determine that there are genuine issues of material fact as to whether an agreement to arbitrate exists." (internal citations omitted)); see Alexander v. Calton & Assocs., Inc., 2005-NMCA-034, ¶ 8, 137 N.M. 293, 110 P.3d 509 ("The appropriate standard of review for a district court's grant of a motion to compel arbitration is de novo.").
III. DISCUSSION
A. Choice of Law
{7} First, we consider which state law to apply in determining whether there is a valid agreement to arbitrate. The terms and conditions contain a choice-of-law provision stating: "THIS AGREEMENT AND ANY SALES THEREUNDER SHALL BE GOVERNED BY THE LAWS OF THE STATE *332 OF TEXAS, WITHOUT REGARD TO CONFLICTS OF LAWS RULES."
{8} Fiser contends that the choice of law provision found in the terms and conditions should not apply to the determination of whether there is indeed a contract. The district court made no findings on whether Texas or New Mexico law should apply in determining whether the parties entered an agreement to arbitrate.
{9} In general, New Mexico looks to the terms of a contract in order to determine the rights of the parties, including the choice of law that should be applied in interpreting that contract. See United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 108 N.M. 467, 470-71, 775 P.2d 233, 236-37 (1989). We are unaware of any New Mexico cases specifically addressing the issue of whether New Mexico law, instead of the law chosen in the contract, should apply to determine if there even is a contract. However, application of fundamental New Mexico choice-of-law principles suggests that Texas law should apply in determining whether the parties agreed to arbitrate.
{10} New Mexico law allows the parties to stipulate in their contract which law is to apply, so long as the law they choose has a relationship to the contract. Id. at 470, 775 P.2d at 236. Dell's principal place of business is in Texas, and it builds computers in accordance with a customer's specifications in Texas and Tennessee. Therefore, we conclude that Texas has a reasonable relationship to the contract. See id.; cf. Provencher v. Dell, Inc., 409 F.Supp.2d 1196, 1201-02 (C.D.Cal.2006) (applying Texas law to determine the issue of whether the arbitration provision was enforceable because the agreement provided that Texas law would govern; Texas had a substantial relationship to the parties' transaction as Dell's principal place of business was in Texas; it sold products from Texas; and Texas law was not contrary to California public policy); Hubbert v. Dell Corp., 359 Ill.App.3d 976, 296 Ill.Dec. 258, 835 N.E.2d 113, 120 (2005) (applying Texas law because the terms and conditions specified that Texas law should apply, and since "there is no discernible public policy obstacle to enforcing the choice-of-law provision, the parties agree that Texas law applies, Texas bears a reasonable relationship to the parties and the transaction because the defendant's principal place of business is in Texas, and the issues in this case involve basic contract law, so there will be no substantial difference in the outcome of this case if Texas law is applied").
{11} Even though the parties contracted to apply Texas law and Texas bears a reasonable relationship to the agreement, we will refuse to enforce the choice-of-law provision if to do so would offend New Mexico public policy. See United Wholesale Liquor Co., 108 N.M. at 470, 775 P.2d at 236 (stating that "the forum may decline to apply the out-of-state law if it offends the public policy of New Mexico"); accord Reagan v. McGee Drilling Corp., 1997-NMCA-014, ¶¶ 8-9, 123 N.M. 68, 933 P.2d 867 (recognizing that New Mexico courts will enforce a contractual choice-of-law provision unless to do so would violate fundamental principle of justice, or deep-rooted traditions of New Mexico), limited on other grounds by Piña v. Gruy Petroleum Mgmt. Co., 2006-NMCA-063, ¶¶ 20-22, 139 N.M. 619, 136 P.3d 1029. The public policy exception only applies in "extremely limited" circumstances, and requires more than a mere difference among state laws. Reagan, 1997-NMCA-014, ¶ 9, 123 N.M. 68, 933 P.2d 867 (internal quotation marks and citations omitted).
{12} We are unconvinced that application of Texas law to determine whether the parties agreed to arbitrate would violate any fundamental principle, or public policy of New Mexico, nor are we convinced that the outcome of this determination would differ, depending upon whether we applied the law of Texas or New Mexico. Under Texas law, any doubts about whether there is an agreement to arbitrate must be resolved in favor of arbitration. See Dell, Inc. v. Muniz, 163 S.W.3d 177, 181 (Tex.App.2005); AutoNation USA Corp. v. Leroy, 105 S.W.3d 190, 195 (Tex.App.2003). It is not clear that New Mexico has applied the same presumption to this initial determination of whether the parties agreed to arbitrate. See DeArmond, 2003-NMCA-148, ¶ 8, 134 N.M. 630, 81 P.3d *333 573 (recognizing that "a legally enforceable contract is still a prerequisite for arbitration[,]" and characterizing the holding in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), as "stating that the presumption in favor of arbitration is reversed when there is a dispute as to the existence of an agreement").
{13} Even though the presumption in favor of arbitration may not apply to the initial determination of the existence of a contract, New Mexico does have a strong public policy in favor of freedom of contract. See United Wholesale Liquor Co., 108 N.M. at 471, 775 P.2d at 237. Moreover, like Texas, New Mexico has a strong policy in favor of arbitration. See Santa Fe Techs., Inc., 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221 ("Arbitration is a form of dispute resolution highly favored in New Mexico" promoting "both judicial efficiency and conservation of resources by all parties."); Casias v. Dairyland Ins. Co., 1999-NMCA-046, ¶ 7, 126 N.M. 772, 975 P.2d 385 (recognizing the Supreme Court's repeated reaffirmation of New Mexico's strong public policy, favoring resolution of disputes through arbitration). Therefore, we look to Texas law to determine whether the parties entered into an agreement to arbitrate, but we decline to apply the presumption in favor of arbitration to this initial determination. Moreover, we also consider whether the outcome under Texas law constitutes an offense to the public policy of New Mexico.
B. Did Fiser Agree to Arbitrate?
{14} Looking at the undisputed facts as we must when reviewing the order compelling arbitration, DeArmond, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573, we consider whether these facts establish that Fiser agreed to arbitrate. Fiser purchased his computer via Dell's website. Each page of the website contains a hyperlink in blue print entitled "Terms and Conditions of Sale." Selection of the hyperlink reveals the following language: "PLEASE READ THIS DOCUMENT CAREFULLY! IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS THAT MAY APPLY TO YOU. THIS DOCUMENT CONTAINS A DISPUTE RESOLUTION CLAUSE."
{15} Paragraph 13 of the terms and conditions states in part:
Binding Arbitration. ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT AND EQUITABLE CLAIMS) AGAINST DELL . . . arising from or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement . . ., Dell's advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect. . . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties, and may be entered as a judgment in any court of competent jurisdiction.
{16} After Fiser placed his online order, Dell sent back an electronic confirmation of receipt of the order to the email address provided by Fiser. The confirmation stated in part: "ALL SALES ARE SUBJECT TO DELL'S TERMS AND CONDITIONS OF SALE. YOU CAN FIND THEM BY CLICKING HERE: Terms and Conditions of Sale." Dell also sent an acknowledgment to the email address provided by Fiser. It identified the components of the computer to be shipped to Fiser. Before listing the components, the acknowledgment states: "PLEASE REVIEW IMPORTANT TERMS AND CONDITIONS OF SALE." The acknowledgment contained a hyperlink permitting immediate access to the terms and conditions, including the arbitration provision.
{17} Dell shipped the computer to Fiser on November 13, 2003, via UPS. In the box with the computer was a written copy of the *334 terms and conditions of sale. The terms and conditions contain an introductory statement, which states that "[b]y accepting delivery of the computer systems, . . . Customer agrees to be bound by and accepts these terms and conditions. If for any reason Customer is not satisfied with a Dell-branded hardware system, Customer may return the system under the terms and conditions of Dell's Total Satisfaction Return Policy." The introductory statement states that the Total Satisfaction Return Policy may be found online, providing a web address, and it also states that a written copy of it is included in the documentation shipped with the computer. Under the Total Satisfaction Return Policy, Fiser could cancel his purchase at any time within thirty days, and get a full refund of the purchase price.
{18} Fiser claims that, even though the confirmation and acknowledgment were sent by electronic mail, he never received them due to a filter on his computer. He claims that he only learned of the terms and conditions when he received the paper copy that accompanied the computer. He claims that as Dell never informed him of the terms and conditions, including the arbitration provision prior to consummating the purchase, he was not informed that an agreement to arbitrate was a condition of purchase, and he never agreed to any such provision.
{19} The question of whether a purchaser is bound by terms contained on hyperlinks in a website and electronic mail notification, coupled with identical written terms that are only delivered after purchase, is an issue of first impression in New Mexico. Cases in other jurisdictions have discussed variations on this theme with inconsistent results. At one end of the spectrum, there appear to be cases, such as Specht v. Netscape Communications Corporation, 150 F.Supp.2d 585, 594 (S.D.N.Y.2001), aff'd 306 F.3d 17 (2d Cir.2002), which analyzed what it called a "browse-wrap" agreement. Such an agreement provides terms and conditions of the contract via a hyperlink on a website, but requires no specific assent to the terms and conditions. In Specht, the link was placed at a location on the page where the user had to scroll down to see it. 150 F.Supp.2d at 588, 594. The court in Specht also described "shrink-wrap" and "click-wrap" agreements. Shrink-wrap agreements refer to the packaging surrounding software and other goods, and these agreements originally had documentation that could be read prior to opening the package, stating that the software is subject to licensing agreements and, if the purchaser does not agree to the license, he or she may return the product for a refund. Id. at 592. A click-wrap agreement serves the same function as a shrink-wrap agreement, although the transaction and affirmative action by the purchaser is consummated not by opening the product and using it, but by clicking a button on the screen of the computer. Id. at 593-94.
{20} In a browse-wrap agreement, a potential customer has the terms and conditions available, but is never required to indicate acceptance of such terms by any positive action. In a click- or shrink-wrap agreement, there is the requirement of positive action. While the courts in Specht would not allow the virtually hidden hyperlink to indicate assent to the terms and conditions contained therein, other courts have affirmed the existence of a contract based on terms and conditions contained in hyperlinks that it found to be more conspicuous and that were repeated multiple times. See, e.g., Hubbert, 296 Ill.Dec. 258, 835 N.E.2d at 121-22. In this case, we need not decide the outer reaches of what type of notice and assent is necessary to form a contract in a transaction consummated solely over the internet. That is because we hold that Fiser's conduct in keeping the computer after receiving the written terms and conditions constitutes acceptance of the terms contained therein.
{21} As previously stated, the terms and conditions, including the arbitration agreement, were enclosed in the documents accompanying the computer, and Fiser was notified that he had thirty days to return the computer if he did not agree to the accompanying terms and conditions. In his brief-in-chief, Fiser contends that the terms and conditions were only on the reverse side of the second page of the packing slip. However, Dell submitted an "Affidavit of Mary Pape," stating that the terms were also enclosed separately. *335 Fiser's affidavit does not rebut Pape's statement. Therefore, we proceed to analyze whether Fiser agreed to the terms and conditions, assuming they were enclosed on a separate paper accompanying the computer. See V.P. Clarence Co. v. Colgate, 115 N.M. 471, 472, 853 P.2d 722, 723 (1993) (stating that arguments made by counsel, and statements contained in a brief, are not evidence).
{22} A consumer who purchases goods and is informed of the contractual terms when the product is delivered, and is given a specified number of days in which to return the product, is deemed to have accepted the terms unless the product is returned within the specified time period. Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1149 (7th Cir.1997). Such "approve-or-return contracts" are enforceable in almost all jurisdictions that have considered the issue. See M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 998 P.2d 305, 313 & n. 10 (2000) (en banc) (noting that the "overwhelming majority view" is to find that approve-and-return agreements are effective, and that contractual terms that accompany the shipment of a product are part of the contract unless the buyer returns the merchandise); accord Provencher, 409 F.Supp.2d at 1205-06; Stenzel v. Dell, Inc., 2005 ME 37, ¶ 12, 870 A.2d 133 (applying Texas law, and holding that the plaintiffs agreed to be bound to the agreement, including the arbitration provision, when they accepted the delivery of the computers, and did not return them as provided in the agreement); cf. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (upholding a forum selection clause in a non-negotiated form contract, even though consumers were not notified of the clause until after they had paid for their cruise tickets).
{23} As recognized by the court in ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1451 (7th Cir.1996), "[t]ransactions in which the exchange of money precedes the communication of detailed terms are common." Moreover, "[n]otice on the outside, terms on the inside, and a right to return the software for a refund if the terms are unacceptable . . ., may be a means of doing business valuable to buyers and sellers alike." Id.; see Hill, 105 F.3d at 1149 (noting that "[p]ayment preceding the revelation of full terms is common for air transportation, insurance, and many other endeavors [and][p]ractical considerations support allowing vendors to enclose the full legal terms with their products").
{24} Fiser argues that the contract with Dell was formed as soon as Dell accepted Fiser's order and credit card payment. Therefore, he argues, the terms and conditions were not a part of his contract with Dell, and no agreement to arbitrate exists. We disagree.
{25} When an item, such as a computer, is purchased over the phone or on the internet, a consumer should reasonably expect that certain terms and conditions will accompany the purchase. Furthermore, customers can reasonably expect the seller to make certain promises or warranties that are only clarified in writing at the time of shipment. For example, Dell undertakes additional obligations based upon the materials included in the computer shipment, including being bound to the warranty, and certain service obligations described therein. See ProCD, Inc., 86 F.3d at 1449-50.
{26} Fiser urges this Court to reverse the district court's decision based upon the rationale of Klocek v. Gateway, Inc., 104 F.Supp.2d 1332 (D.Kan.2000). We decline to do so. Despite the holdings in Mortenson, Hill, and ProCD to the contrary, the court in Klocek rejected the seller's contention that the arbitration agreement was part of the contract between the purchaser and seller. Id. at 1338-41. It found that terms provided at the time of delivery do not become part of the sales contract unless there was clear communication at the time of the sale. Id. at 1341. As Gateway failed to inform the buyer at the time of sale that the transaction was dependent upon buyer's acceptance of the "standard terms," those terms did not become part of the contract, even though they were included with the computer. Id.
{27} Dell asserts that Klocek is materially distinguishable from this case because Fiser, unlike the buyer in Klocek, was provided with notice in the hyperlinks on Dell's website *336 and in the email confirming his purchase. Nonetheless, we agree with Dell that the holding in Klocek is contrary to the majority position and contrary to the economic realities presented in consumer sales. See Hill, 105 F.3d at 1149 (noting that "[c]ustomers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and use instead a simple approve-or-return device," and holding that competent adults are bound by the terms contained in approve-or-return documents, "read or unread").
{28} The court in Klocek relied on the language of Section 2-207 of the Uniform Commercial Code (UCC) to determine that the written materials were additional terms to the contract that was already in place. Klocek, 104 F.Supp.2d at 1337-41; cf. NMSA 1978, § 55-2-207 (1961) (outlining when a document responding to an offer constitutes acceptance despite the presence of additional and different terms, and stating when additional terms will become part of a contract as between merchants). We disagree with the court in Klocek that resolution of this issue is controlled by Section 2-207, and instead adopt the position articulated by other courts that Section 2-207 does not apply because it does not address the formation of a contract, and does not specify when additional terms may become part of a contract involving a non-merchant. See M.A. Mortenson Co., 998 P.2d at 312 (interpreting Washington's version of the UCC, and holding that Section 2-204 addressing contract formation, not Section 2-207 addressing contract alteration, applies to determine whether terms that accompany the shipment of software were part of the contract to purchase the software, and holding that the terms were part of the contract); accord Hill, 105 F.3d at 1150 (recognizing that the question is one of contract formation, and holding that Section 2-207 of Texas UCC, regarding terms added to an existing contract, is irrelevant); ProCD, Inc., 86 F.3d at 1452 (applying Section 2-204 of the UCC, and holding that buyers of computer software are bound by the terms of the license agreements that are contained inside the software box because they accept those terms by failing to return the software for a refund); Stenzel, 2005 ME 37, ¶¶ 10-12, 870 A.2d 133 (applying Section 2-204(a) of Texas' version of the UCC in recognition that a contract for a sale of goods may be made in any manner showing agreement, including conduct by both parties that recognizes the existence of the contract, and holding that acceptance of computer goods without returning them bound the purchaser to the terms accompanying the shipment).
{29} Moreover, review of the cases cited by Fiser, as allegedly consistent with the approach in Klocek, indicate important distinctions which negate Fiser's claim that Klocek is not an "anomaly." Many involve a series of sales negotiations between two commercial entities, not consumer transactions. See, e.g., Coastal Indus., Inc. v. Automatic Steam Prods., Corp., 654 F.2d 375, 376 (5th Cir.1981); Supak & Sons Mfg. Co. v. Pervel Indus., Inc., 593 F.2d 135, 135-36 (4th Cir. 1979); Senco, Inc. v. Fox-Rich Textiles, Inc., 75 Conn.App. 442, 816 A.2d 654, 655-56 (2003); Schubtex, Inc. v. Allen Snyder, Inc., 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154, 1155 (N.Y.1979). Moreover, Fiser's reliance on Specht is misplaced because in that case the seller attempted to rely on terms and conditions that were only set forth on a computer screen without any written approve-or-return documents. Specht, 306 F.3d at 31-33. The court in Specht recognized that a different result would be warranted had the arbitration agreement also been included as part of an approve-or-return contract. Id. at 32-33.
{30} Based upon the foregoing, we affirm the district court's finding that Fiser agreed to the terms and conditions, a written copy of which was delivered with the computer, including the arbitration provision, because Fiser failed to reject the terms when he failed to return the computer within thirty days.
C. Unconscionability
{31} Fiser argues that, even if he agreed to arbitrate, the arbitration agreement is unenforceable as unconscionable because (1) it requires customers to arbitrate claims against Dell, but does not require arbitration of any claims it might have *337 against its customers; and (2) it precludes pursuing a claim as a class action. In light of the district court's failure to enter any factual findings when granting the motion to stay and to compel arbitration, we review the district court's decision de novo. See DeArmond, 2003-NMCA-148, ¶ 4, 134 N.M. 630, 81 P.3d 573.
{32} Pursuant to the terms and conditions, Texas law should apply to determine unconscionability. See United Wholesale Liquor Co., 108 N.M. at 471, 775 P.2d at 237. Fiser does not specifically contest the application of Texas law, although he relies on cases from a number of other jurisdictions, especially California, to support his argument that the arbitration agreement is unenforceable as unconscionable. We apply Texas law, but also address New Mexico law to ensure that enforcement of the arbitration provision does not violate the public policy of New Mexico. Under Texas law and the Federal Arbitration Act (FAA), the party opposing arbitration bears the burden of proving unconscionability because the law favors arbitration. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 756 (Tex.2001).
D. Procedural Unconscionability
{33} Fiser contends that the arbitration clause is procedurally unconscionable because it is part of a contract of adhesion and because Dell has superior bargaining power, rendering the terms "so one-sided as to be unreasonable." We agree with Fiser that the terms and conditions constitute a contract of adhesion under Texas law because they constitute a "standardized contract form[ ] offered to consumers of goods and services on an essentially `take it or leave it' basis . . . limit[ing] the duties and liabilities of the stronger party." Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 355 (Tex.1987). However, such contracts of adhesion are not unconscionable unless substantive unconscionability can also be established. See In re Halliburton Co., 80 S.W.3d 566, 572 (Tex.2002). Furthermore, contracts of adhesion are not unenforceable merely because there is a disparity in bargaining power. See Holeman v. Nat'l Bus. Inst., Inc., 94 S.W.3d 91, 99 (Tex.App.2002) (noting that disparate bargaining power is not enough to render a contract unconscionable, and stating that "it is the unfair use of, not the mere existence of," disparity in bargaining power that renders a contract unconscionable).
{34} Fiser cannot establish that Dell unfairly used its stronger bargaining position to force Fiser to enter the arbitration agreement. To the contrary, Fiser made no allegations that he could not have chosen to buy a computer from another company. See Provencher, 409 F.Supp.2d at 1204 (stating that "[a] contract is procedurally unconscionable if a party has `no real choice' but to enter into the contract" (quoting Dillee v. Sisters of Charity, 912 S.W.2d 307, 309 (Tex.App. 1995))); cf. Lindemann v. Eli Lilly & Co., 816 F.2d 199, 203-04 (5th Cir.1987) (applying Texas law to determine whether a contract is unconscionable by examining the alternatives available at the time the parties formed the contract, and considering evidence regarding the party's inability to bargain and the contract's illegality or disparity with public policy).
{35} Likewise, the terms and conditions are not procedurally unconscionable under New Mexico law where they would not even constitute a contract of adhesion. See Guthmann v. La Vida Llena, 103 N.M. 506, 509, 709 P.2d 675, 678 (1985). In New Mexico, there are three required elements for a contract of adhesion:
First, the agreement must occur in the form of a standardized contract prepared or adopted by one party for the acceptance of the other. Second, the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms. Finally, the contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining.
Id. (citations omitted). Fiser failed to establish that the terms and conditions satisfy the second element because he made no showing that Dell monopolizes the home computer *338 market, or that Fiser had no other options when purchasing a personal computer. See id.
{36} Fiser relies on cases applying California law to support his contention that Dell's superior bargaining strength renders the arbitration agreement unconscionable. In light of Texas and New Mexico case law to the contrary, we decline Fiser's invitation to look to California law to find the arbitration agreement procedurally unconscionable.
E. Substantive Unconscionability
{37} In general, "[a] contract is substantively unconscionable if it is so one-sided that `no man in his senses and not under a delusion would enter into [it] and which no honest and fair person would accept.'" Provencher, 409 F.Supp.2d at 1204 (quoting Blount v. Westinghouse Credit Corp., 432 S.W.2d 549, 554 (Tex.App.1968)); see FirstMerit Bank, N.A., 52 S.W.3d at 757. Fiser claims that the arbitration agreement is substantively unconscionable because the agreement requires the buyer to arbitrate its claims against Dell while the parties are not required to arbitrate any hypothetical claims that Dell might have against a buyer.
{38} Texas does not require that parties to an arbitration agreement be equally bound with respect to the arbitration agreement as long as the parties have "provided each other with consideration beyond the promise to arbitrate." Quinn v. EMC Corp., 109 F.Supp.2d 681, 684 (S.D.Tex.2000) (internal quotation marks and citation omitted); see In re AdvancePCS Health L.P., 172 S.W.3d 603, 607-08 (Tex.2005) (rejecting the claim that a non-mutual arbitration clause was unconscionable).
{39} In this case, Fiser agreed to pay for the computer and to be bound by the terms and conditions, including the agreement to arbitrate any claims he has against Dell. In exchange, Dell is obligated to provide Fiser with computer hardware, certain warranties, and service obligations. As both parties have obligations, albeit different ones, there is mutuality of obligation in the terms of the agreement. Other courts have reached similar conclusions in upholding the validity of arbitration agreements. See, e.g., Harris v. Green Tree Fin. Corp., 183 F.3d 173, 180 (3rd Cir.1999) (holding that "parties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate"); see also Barker v. Golf U.S.A., Inc., 154 F.3d 788, 792 (8th Cir.1998) (holding that "consideration for a contract as a whole covers the arbitration clause").
{40} Application of Texas law does not offend New Mexico public policy because New Mexico also does not consider a contract invalid as unconscionable merely because the contract imposes different burdens on the respective parties. Fiser is correct that a contract will be invalid if it is so one-sided as to be unconscionable. However, the threshold for unconscionability in New Mexico is very high. See Monette v. Tinsley, 1999-NMCA-040, ¶ 19, 126 N.M. 748, 975 P.2d 361 (stating that a contract may be held to be substantively unconscionable if its terms are unreasonably favorable to one party, but noting that "the threshold for such a holding is very high"); Guthmann, 103 N.M. at 510, 709 P.2d at 679 ("Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair."). In this case, even though only the buyer is required to arbitrate its claims, both parties have contractual obligations. We are aware of no New Mexico authority, and Fiser has failed to provide any, suggesting that parties must be bound to identical obligations, or otherwise the contract is void as unconscionable. Cf. Talbott v. Roswell Hosp. Corp., 2005-NMCA-109, ¶ 16, 138 N.M. 189, 118 P.3d 194 (stating that "[m]utuality means both sides must provide consideration," but in no way suggesting that the consideration provided by both parties must be identical (internal quotation marks and citation omitted)).
{41} Moreover, contrary to Fiser's contentions, we are not convinced that a different result is warranted based upon the Supreme Court's decision in Padilla v. State Farm Mutual Automobile Insurance Co., 2003-NMSC-011, 133 N.M. 661, 68 P.3d 901. In that case, the Supreme Court held that the *339 arbitration provision was unfair because, in essence, if the insured prevailed in arbitration, the decision might be subject to de novo review in court while, if the insurer prevailed, the arbitrator's decision was final. Id. ¶ 10. In this case, both Fiser and Dell would be equally bound by the arbitrator's decision.
{42} Finally, to whatever extent New Mexico might otherwise attempt to impose stricter standards on arbitration agreements than on other contracts, it is prevented from so doing. See Perry v. Thomas, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (noting that state law "whether of legislative or judicial origin" may apply in determining the validity of a contract to arbitrate if that law concerns "the validity, revocability, and enforceability of contracts generally," but any state law principle that "takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with th[e] requirement of § 2" of the FAA); DeArmond, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 81 P.3d 573 (observing that "[s]tates may not subject an arbitration agreement to requirements that are more stringent than those governing the formation of other contracts").
{43} Fiser again attempts to rely on cases applying California law, but we decline to consider them in light of the Texas and New Mexico cases to the contrary.
F. Failure to Allow Class Arbitration
{44} Fiser contends that the arbitration agreement is unconscionable because it unfairly restricts class actions due to the procedural rules of the National Arbitration Foundation (NAF), which do not allow claims to proceed as class actions.
{45} We recognize that there is a split of authority on this issue. Compare Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir.2002) (holding that arbitration provisions that preclude class actions are not unconscionable); Randolph v. Green Tree Fin. Corp.-Ala., 244 F.3d 814, 816-19 (11th Cir.2001) (same); Hubbert, 296 Ill.Dec. 258, 835 N.E.2d at 125-26 (same); Stenzel, 2005 ME 37, ¶ 28, 870 A.2d 133 (same), with Luna v. Household Fin. Corp. III, 236 F.Supp.2d 1166, 1178-79 (W.D.Wash.2002) (holding that based upon the facts presented, the arbitration provisions restricting or banning class actions are substantively unconscionable); Leonard v. Terminix Int'l Co., 854 So.2d 529, 535-39 (Ala.2002) (same); Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 311-14 (Mo. Ct.App.2005) (same); State ex rel. Dunlap v. Berger, 211 W.Va. 549, 567 S.E.2d 265, 278-80 (2002), abrogation recognized by Schultz v. AT & T Wireless Servs., Inc., 376 F.Supp.2d 685 (W.D.W.Va.2005). However, we look to decisions applying Texas law, and conclude that the arbitration clause is not unconscionable merely because Fiser is precluded from bringing his claim as a class action. See AutoNation USA Corp., 105 S.W.3d at 198-201 (disagreeing with the plaintiff's contention that the right to proceed on a class-wide basis supersedes a contracting party's right to arbitrate under the FAA).
{46} In AutoNation USA Corp., the plaintiff argued that enforcement of the arbitration provision was substantively unconscionable because it prohibited class treatment of consumers' claims for small damages. Id. at 199-200. The plaintiff argued that enforcement of the arbitration clause would discourage consumers with small claims from seeking redress. Id. The Texas appellate court disagreed. It noted that "[t]he burden is on the party seeking to avoid the arbitration provision" to prove unconscionability. Id. at 198. It then noted that the plaintiff's argument assumed that the right to proceed on a class-wide basis superceded the right to contract to arbitrate. Id. at 200. This was in error and at odds with the primary purpose of the FAA, which is to overcome the traditional refusal of courts to enforce agreements to arbitrate. Id. As long as the arbitration provision does not deprive the plaintiff of any substantive rights, or statutory remedies otherwise available, it was not unconscionable merely because the arbitration provision acted as a disincentive to pursue an individual remedy for small damages. Id.; see also Hubbert, 296 Ill.Dec. 258, 835 N.E.2d at 125-26 (rejecting the buyer's "generalized arguments" that the arbitration provision was unconscionable because it prevented the plaintiffs from proceeding with a class action *340 because such arguments are insufficient to sustain the burden of proving that the arbitration provision is unconscionable).
{47} Moreover, we are not convinced that application of Texas law on this point contravenes any New Mexico policy given that the threshold for unconscionability in New Mexico is very high. See Monette, 1999-NMCA-040, ¶ 19, 126 N.M. 748, 975 P.2d 361; Guthmann, 103 N.M. at 510, 709 P.2d at 679. In New Mexico, substantive unconscionability requires that the terms of the contract be such "as no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." Id. at 511, 709 P.2d at 680 (internal quotation marks and citation omitted). We are not convinced that New Mexico public policy would render an arbitration clause unconscionable because it precludes class actions given our clear preference for enforcing arbitration agreements. See McMillan v. Allstate Indem. Co., 2004-NMSC-002, ¶ 9, 135 N.M. 17, 84 P.3d 65 (recognizing "that in New Mexico there is a strong public-policy preference in favor of resolving disputes through arbitration . . . [and that] arbitration is encouraged as a means of relieving congestion in the court system, speeding up resolution of disputes, and making the resolution of cases more economical to all parties" (citations omitted)).
{48} Fiser is correct that arbitration clauses are only enforceable under the FAA if they "make proceedings accessible so that claimants can effectively enforce their rights." See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). However, when invited to do so, Fiser has failed to make a showing that merely because he is precluded from pursuing his claims as a class action, he is being subject to large arbitration costs that preclude him from effectively vindicating his rights. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90-91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (holding that the party opposing arbitration has the burden of proving the probability of incurring prohibitive costs); cf. Snowden, 290 F.3d at 638-39 (rejecting the plaintiff's argument that the arbitration agreement is unenforceable as unconscionable because without a class action vehicle she cannot afford to maintain legal representation given such a small amount of individual damage in light of the potential for recovery of attorney fees in the arbitration proceeding); Stenzel, 2005 ME 37, ¶ 29, 870 A.2d 133 (rejecting the plaintiffs' argument that the costs of arbitrating individual claims precluded them from obtaining relief because, pursuant to federal and Texas law, the party challenging the arbitration clause must present a detailed showing of the arbitration costs and the plaintiffs had failed to do so).
{49} The district court afforded the parties a second opportunity to explore whether the agreement should be set aside as unconscionable. It requested additional briefing on this issue, and then conducted a second hearing. However, Fiser introduced no evidence showing he could not fully pursue his claim in arbitration. See FirstMerit Bank, 52 S.W.3d at 757 (holding that the plaintiffs failed to establish unconscionability based upon the alleged excessive cost of arbitration because they failed to supply information as to the actual costs that might be incurred). Fiser claims that the class action ban effectively deprives consumers of "their only practical remedy when nominal amounts of damages were at issue." Furthermore, he claims that "[c]ommon sense dictates that consumers do not hire lawyers to privately arbitrate individual claims for amounts in the neighborhood of $5-$100." However, the record does not indicate that Fiser made any showing that he could not collect the costs of bringing the claim should he prevail in arbitration.
{50} In light of Fiser's failure to show that he will incur excessive costs by pursuing his claim individually in arbitration, and his failure to show that the costs of pursuing arbitration were so prohibitive as to preclude him from asserting his claim, we are unpersuaded that the arbitration agreement precludes Fiser from being able to effectively enforce his rights. Cf. Provencher, 409 F.Supp.2d at 1202-03 (observing that arbitration in the NAF "is an inexpensive, convenient, and efficient forum" for the plaintiff to resolve his disputes with Dell, "not a device that Dell can use to escape liability for alleged wrongful conduct," and listing the various financial *341 and procedural advantages that a party may be entitled to when proceeding with a national arbitration forum such as the NAF).
{51} Finally, we are unpersuaded by Fiser's reliance on California law and the law of jurisdictions other than Texas and New Mexico to support his contention that the arbitration provision is unconscionable because it unfairly restricts class actions. For example, Fiser relies on Discover Bank v. Superior Court, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). In Discover Bank, the California Supreme Court held that at least some class action waivers would be invalid to the extent they are governed by California law. Id. 30 Cal.Rptr.3d 76, 113 P.3d at 1110. However, the court specifically limited its holding to California law, and relied explicitly on California statutory authority in holding that certain class action waivers in consumer contracts of adhesion are unconscionable if the claims are likely to involve small amounts of damage, and include allegations that the party with the superior bargaining power carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money. Id. The court then remanded the case to determine whether California law should apply to determine the validity of the class action waiver given that the agreement between Discover Bank and the plaintiff had a Delaware choice-of-law agreement. Id. 30 Cal.Rptr.3d 76, 113 P.3d at 1117-18.
{52} On remand, the court determined that Delaware law should apply, and that the class action waiver was enforceable under Delaware law. Discover Bank v. Super. Ct., 134 Cal.App.4th 886, 36 Cal.Rptr.3d 456, 458-59 (2005). In reaching its decision, the court cited to the law in eight other states where such class action waivers have been enforced, and the law in four states that had refused to enforce the waivers as unconscionable. Id. at 459 n. 3.
{53} In this case, we apply Texas law, not California law, in determining whether the class action waiver invalidates the agreement. As previously discussed, the arbitration agreement, including the preclusion of proceeding as a class action, is enforceable under Texas law as well as in a number of other jurisdictions. See, e.g., Metro E. Ctr. v. Qwest Commc'ns Int'l, Inc., 294 F.3d 924, 927 (7th Cir.2002); Snowden, 290 F.3d at 638-39; Med Ctr. Cars, Inc. v. Smith, 727 So.2d 9, 19-20 (Ala.1998); Rains v. Found. Health Sys. Life & Health, 23 P.3d 1249, 1253-54 (Colo.Ct.App.2001).
{54} For the same reasons, we decline to consider the supplemental authority submitted by Fiser on August 30, 2006, and December 29, 2006. None of this additional authority applied Texas law, so assuming without deciding that the underlying facts and issues in these cases are sufficiently analogous to the facts presented by Fiser to be of some relevance, they still do not warrant reconsideration of the analysis contained above. See, e.g., Kinkel v. Cingular Wireless LLC, 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250, 267-69, 277-78 (2006) (holding that an arbitration provision that waived class actions, and thus required the consumer to pay a $125 fee to vindicate a $150 claim, was substantively unconscionable, but also holding that the waiver provision was severable from the remainder of the arbitration provision, which would be enforced); Schwartz v. Alltel Corp., 2006-Ohio-3353, ¶¶ 26-30, 2006 WL 2243649 (holding that the arbitration provision was substantively unconscionable because it precluded the award of attorney fees, which were authorized in the relevant Ohio consumer protection statute).
{55} Moreover, we are unpersuaded by Fiser's citation to Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir.2006), for a number of reasons. First, the court did not apply Texas law to determine the issue of unconscionability. Id. at 54-59. Second, in that case, the consumer made a showing that he could not obtain review of his antitrust allegations if he could not proceed as a class. Id. at 54-55. The court noted that the affidavits from experts indicated that expert fees alone were estimated to be in the "hundreds of thousands of dollars[,] and attorney's fees could reach into the millions of dollars" while the expected recovery, even assuming treble damages, would be a few hundred to perhaps a few thousand dollars. Id. at 54. As previously discussed, Fiser has not made any such showing as to the costs of arbitration on his *342 individual claim. Cf. id. at 58 (observing that the prosecution of an antitrust claim involves a great deal of expense, labor, and "elaborate factual inquiry" that is distinguishable from other types of consumer claims).
{56} Therefore, we affirm the district court's decision to enforce the arbitration provision despite the fact that it might be found unconscionable in some other jurisdictions.
G. New Mexico Constitution
{57} Fiser argues that the arbitration agreement violates the New Mexico Constitution by denying him a right to trial by jury because the terms and conditions were not specifically negotiated between he and Dell. We disagree.
{58} As previously discussed, we apply Texas law, not New Mexico law, to determine the validity of the arbitration agreement. Furthermore, we are unconvinced that enforcement of the arbitration policy would violate the public policy of New Mexico by violating the New Mexico Constitution.
{59} Neither of the cases cited by Fiser support his contention that the arbitration clause unconstitutionally violates his right to trial by jury on his claims for breach of contract. See Lisanti v. Alamo Title Ins. of Tex., 2002-NMSC-032, 132 N.M. 750, 55 P.3d 962; Bd. of Educ. v. Harrell, 118 N.M. 470, 882 P.2d 511 (1994). Both of these cases address government-mandated arbitration. Harrell involved a statute, which mandated arbitration as the exclusive method by which a certified school employee could obtain review of that employee's discharge. Id. at 473, 882 P.2d at 514. The Supreme Court held that the statutory requirement to arbitrate violated the plaintiff's right to trial by jury because there was no voluntary waiver of the right to a jury trial. Id. at 476, 882 P.2d at 517.
{60} Likewise, in Lisanti, the Supreme Court invalidated a regulation promulgated by the insurance department, pursuant to its statutory authority, that mandated arbitration of any title policy-related claims under $1,000,000. 2002-NMSC-032, ¶ 1, 132 N.M. 750, 55 P.3d 962. The Court held that arbitration mandated by law or regulation violated the parties' right to trial by jury because arbitration was compelled by statute, and thus was not a result of a voluntary waiver of the right to jury trial. Id. ¶¶ 16-25.
{61} We disagree that a purchaser, who is compelled to arbitrate based upon a written arbitration agreement that is deemed accepted when the purchaser fails to return the goods, is analogous to a party being compelled to arbitrate by statute or regulation. In both Lisanti and Harrell, the Court distinguished situations in which the parties voluntarily entered into contractual agreements to arbitrate. Lisanti, 2002-NMSC-032, ¶ 17, 132 N.M. 750, 55 P.3d 962 (reiterating that "[w]hen a party agrees to a nonjudicial forum for dispute resolution, the party should be held to that agreement"); Harrell, 118 N.M. at 475-76, 882 P.2d at 516-17 (distinguishing arbitration that is freely entered into by contract from arbitration that is compulsory because required by statute).
{62} As previously discussed in this Opinion, we affirm the district court's finding that the parties agreed to arbitrate because Fiser could have refused to agree to arbitrate by returning the computer, and opting to purchase a computer from another vendor that did not require arbitration. In accordance with this finding, the agreement does not violate the New Mexico Constitution because it was voluntarily entered into by the parties, not compelled by statute.
H. Illusoriness
{63} Finally, Fiser contends that the agreement between he and Dell is unenforceable as illusory because Dell reserved the right to alter the terms and conditions. We decline to consider this issue because Fiser failed to preserve it in the district court. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." Woolwine v. Furr's, Inc., 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987); see Rule 12-216(A) NMRA. One purpose of the preservation requirement is that it gives the opposing party a fair opportunity to meet the objection. Garcia ex rel. Garcia v. La Farge, 119 N.M. *343 532, 540, 893 P.2d 428, 436 (1995). Dell points out that had it been informed that Fiser was contending that the contract was illusory, it could have made an evidentiary showing rebutting the contention. See Campos Enters., Inc. v. Edwin K. Williams & Co., 1998-NMCA-131, ¶ 12, 125 N.M. 691, 964 P.2d 855 ("Had Plaintiffs made such allegations in the district court when Defendant had the opportunity to address them by affidavit, the course of proceedings may have been different."). In this case, Fiser first raised this argument in his brief-in-chief. Therefore, we conclude that Fiser did not adequately preserve his illusoriness argument below. See Brown v. Trujillo, 2004-NMCA-040, ¶ 39, 135 N.M. 365, 88 P.3d 881 ("We do not review arguments that are raised for the first time on appeal.") Diversey Corp. v. Chem-Source Corp., 1998-NMCA-112, ¶ 12, 125 N.M. 748, 965 P.2d 332 (observing that rules of preservation require that "[t]he party claiming error must have raised the issue below clearly").
IV. CONCLUSION
{64} For the reasons set forth above, we affirm the district court's order staying Fiser's complaint and compelling arbitration.
{65} IT IS SO ORDERED.
WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.