The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: June 5, 2025

**No. A-1-CA-41167**

**ANDRAS SZANTHO, as Personal Representative for the Wrongful Death Estate of CHERYL SMITH,**

Plaintiff-Appellee,

v.

**CASA MARIA OF NEW MEXICO, LLC d/b/a CASA MARIA HEALTHCARE CENTER AND PECOS VALLEY REHABILITATION and NEW MEXICO HEALTHCARE I, LLC,**

Defendants-Appellants,

and

**BUFFY ITOMITSU, in her capacity as Administrator of Casa Maria Healthcare Center and Pecos Valley Rehabilitation Suites,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Verdi & Ogletree PLLC
Faith Kalman Reyes
Santa Fe, NM

for Appellants

**OPINION**

**DUFFY, Judge.**

{1}     In this appeal, Defendants challenge the district court's denial of their motion to compel arbitration. Defendants argue that (1) delegation provisions in an arbitration agreement signed by Daughter require an arbitrator, rather than the court, to determine if the arbitration agreement is enforceable as to Mother, a non-signatory, and by extension, her estate; (2) Mother's estate must arbitrate its claims against Defendants because Mother was a third-party beneficiary of the contract entered into between Daughter and Defendants; and (3) Mother signed a readmission agreement that, according to Defendants, incorporated the arbitration agreement signed by Daughter. Defendants' first two claims of error are identical to the issues raised in *Szantho v. THI of N.M. at Sunset Villa, LLC* (*Szantho I*), ___-NMCA-___ , ___ P.3d ___ (A-1-CA-41036, Feb. 6, 2025), *cert. granted* (S-1-SC-40809, Apr. 14, 2025), and provide no grounds for reversal. We further conclude that the readmission agreement did not incorporate the arbitration agreement. We affirm the district court's denial of the motion to compel arbitration.

**BACKGROUND**

{2}     Cheryl Smith (Mother) was first admitted to Casa Maria Healthcare Center, a residential nursing facility in Roswell, New Mexico, on January 8, 2020. At the time of her admission, her daughter, Krystle Smith (Daughter), signed both an admission

agreement (Admission Agreement) and a separate dispute resolution agreement (Arbitration Agreement). Daughter did not have legal authority to sign the documents on Mother's behalf, and Mother did not sign either document.

{3} Mother was sent to the local emergency room twice in March 2020. On March 24, 2020, Mother signed a readmission agreement (Readmission Agreement) that allowed her to return to Casa Maria. The two-page Readmission Agreement explicitly incorporated the Admission Agreement, along with each of its attachments, but did not expressly mention the Arbitration Agreement.

{4} After Mother died in July 2021, Plaintiff Andras Szantho was appointed as the personal representative of her wrongful death estate. In this capacity he filed suit against Casa Maria of New Mexico, LLC d/b/a Casa Maria Healthcare Center and Pecos Valley Rehabilitation and New Mexico Healthcare I, LLC (collectively, Defendants) for wrongful death, negligence, unfair trade practices, and punitive damages. In lieu of an answer, Defendants filed a motion to compel arbitration. Following briefing and oral argument on the motion, as well as supplemental briefing specific to the question of whether Mother and Defendants had entered into an arbitration agreement, the district court entered an order denying the motion, concluding that Defendants had failed to establish that Defendants and Mother had agreed to arbitrate their claims. This appeal followed.

**DISCUSSION**

{5}     Defendants argue that the district court erred in denying their motion to compel arbitration for three reasons. First, they contend that the Arbitration Agreement signed by Daughter contained clear and unmistakable delegation provisions, and the district court should have sent the question of whether Mother was bound by the Arbitration Agreement to the arbitrator for decision. Second, Defendants argue the district court should have determined that Mother was bound by the Arbitration Agreement under a third-party beneficiary theory. Finally, Defendants assert that the Readmission Agreement, which Mother signed, incorporated the Arbitration Agreement and is therefore sufficient to bind Mother's estate to arbitrate. All three issues present questions of law that we review de novo. *Szantho I*, \_\_\_-NMCA\_\_\_, ¶ 11.

**I.     Delegation Provision and Third-Party Beneficiary Theory**

{6}     We address Defendants' first and second arguments together because *Szantho I* is dispositive of both issues.

{7}     First, with respect to Defendants' argument that the arbitrator must decide whether the arbitration agreement can be enforced against Mother, a non-signatory, this Court held in *Szantho I* that the question of "whether a non-signatory can be bound by an arbitration agreement is a matter of contract formation for the district court to decide in the first instance." *Id.* ¶ 4. This is true "even where a contract

3

contains a delegation clause, [because] questions of contract formation must be decided by the court and may not be delegated to the arbitrator." *Id.* ¶ 24. Accordingly, even though the Arbitration Agreement at issue in this case contains a delegation clause and incorporates the JAMS rules, the threshold issue of whether Mother agreed to arbitrate was correctly decided by the district court. We briefly address one additional point—Defendants contend Plaintiff does not dispute that Daughter and the Defendants formed a contract. Even so, the question before the district court was whether *Mother* and Defendants formed an agreement to arbitrate. *See id.* ¶ 19 ("The question is not whether the signatory agreed to arbitrate with someone, but whether a binding arbitration agreement exists between the signatory and the non-signatory." (alterations, internal quotation marks, and citation omitted)). And, regardless of Plaintiff's failure to meaningfully engage on either the formation issue or the third-party beneficiary issue in his supplemental briefing in the district court, Defendants always bore the "initial burden to prove that a valid contract exists." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 42, 304 P.3d 409.

{8}     Second, Defendants argue that Mother's estate can be compelled to arbitrate because Mother is a third-party beneficiary of the Arbitration Agreement. In *Szantho I*, this Court held that the third-party beneficiary doctrine does not, as a matter of state law, permit a party to a contract to enforce the contract "against a

4

non-signatory third-party beneficiary where the third-party beneficiary has not otherwise sought to enforce the contract." *Id.* ¶ 4. Plaintiff has not sought to enforce the contracts at issue here. Consequently, the district court did not err in concluding that Mother was not bound by the Arbitration Agreement under Defendants' third-party beneficiary theory.

{9}     For the foregoing reasons, we hold that the district court was correct in its determination that its first task was to ascertain whether the parties to the litigation had agreed to arbitrate their dispute. We further hold that the district court was correct in finding that Defendants' third-party beneficiary argument does not provide a basis for compelling Mother to arbitrate. We affirm the district court on Defendants' first two claims of error.

## II.     Incorporation by Reference

{10}     The novel issue raised in this appeal is whether Mother agreed to arbitrate her claims against Defendants by signing the Readmission Agreement. Defendants contend the Readmission Agreement incorporated the Arbitration Agreement by reference. The district court concluded that the Readmission Agreement does not, in fact, incorporate the Arbitration Agreement. In reaching this conclusion, the district court found that the Readmission Agreement expressly incorporates the terms of the original Admission Agreement, along with each of its attachments; however, the court also found that (1) the Readmission Agreement does not refer to the Arbitration

Agreement, (2) the original Admission Agreement does not refer to the Arbitration Agreement, and (3) the Arbitration Agreement is not an attachment to the original Admission Agreement. Additionally, the district court found that "Defendants also failed to offer any evidence that [Mother] was even aware that [the Arbitration Agreement] existed." As explained below, we conclude that the district court correctly found that Defendants had not successfully incorporated the Arbitration Agreement into the Readmission Agreement.

{11}     "[A]rbitration is a matter of contract." *Sanchez v. United Debt Couns., LLC*, 2024-NMSC-026, ¶ 9, 562 P.3d 564 (internal quotation marks and citation omitted). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Szantho I*, ___-NMCA-___, ¶ 14 (internal quotation marks and citation omitted). "Under contract law, the scope of an arbitration provision—whether the parties intended to submit to arbitration—is determined by applying the plain meaning of the contract language." *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 14, 288 P.3d 888 (alteration, internal quotation marks, and citation omitted).

{12}     This Court has previously indicated that incorporation by reference may be sufficient to bind a non-signatory guarantor to an arbitration agreement. *See Monette v. Tinsley*, 1999-NMCA-040, ¶ 11, 126 N.M. 748, 975 P.2d 361 (recognizing that a

6

non-signatory guarantor may be bound by a contract's arbitration clause when a note or guaranty incorporates the underlying contract by reference, but holding that the note at issue bore no indication that the underlying contract was incorporated by reference); *Damon v. StrucSure Home Warranty, LLC*, 2014-NMCA-116, ¶ 11, 338 P.3d 123 (recognizing five theories, including incorporation by reference, for binding non-signatories to arbitration agreements). Nonetheless, despite New Mexico courts' longstanding recognition that parties to a contract can incorporate another document by reference,[1] no New Mexico case has yet discussed what is necessary to effect a valid incorporation. However, there are certain basic requirements that have been accepted in the majority of jurisdictions. *See State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 752 S.E.2d 586, 596-98 & 596 n.12 (W. Va. 2013) (collecting cases).[2] Two of those requirements are relevant to the question

---

[1]*See, e.g.*, *Sw. Portland Cement Co. v. Williams*, 1926-NMSC-052, ¶¶ 1-6, 32 N.M. 68, 251 P. 380; *Chavez v. Sedillo*, 1955-NMSC-039, ¶ 7, 59 N.M. 357, 284 P.2d 1026; *Brown v. Jimerson*, 1980-NMSC-125, ¶ 1, 95 N.M. 191, 619 P.2d 1235; *Gonzales v. Tama*, 1988-NMSC-016, ¶ 5, 106 N.M. 737, 749 P.2d 1116; *Monette*, 1999-NMCA-040, ¶ 11; *Hasse Contracting Co., Inc. v. KBK Fin., Inc.*, 1999-NMSC-023, ¶ 19, 127 N.M. 316, 980 P.2d 641; *Centex/Worthgroup, LLC v. Worthgroup Architects, LP*, 2016-NMCA-013, ¶ 18, 365 P.3d 37.

[2] *See also* Thomas H. Oehmke & Joan M. Brovins, *Commercial Arbitration* § 9:2, Westlaw (database updated December 2024) ("Parties successfully incorporate by reference separate writings, or portions thereof, into an agreement when: [(1)] the underlying contract makes clear reference to the extrinsic, incorporated document[; (2)] the identity and location of the extrinsic document is ascertainable beyond doubt . . .[; (3)] the parties have knowledge of its incorporation[; and (4)] the contracting parties have a meeting of minds or mutual assent on all essential terms."); *French v. Centura Health Corp.*, 2022 CO 20, ¶¶ 29-

7

presented in this appeal, and we adopt and apply them here. First, the contract must make a "clear reference to the document and describe[] it in such terms that its identity may be ascertained beyond doubt." 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 2025). Second, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Id.*

{13}     The Readmission Agreement is two pages long and contains seven numbered paragraphs. *See* Readmission Agreement, attached as Appendix A. Of relevance to the issues raised on appeal, paragraph two states in full: "The terms, conditions, and obligations of the parties as stated in the original Admission Agreement, along with each of its attachments, are incorporated in this Readmission Agreement by reference thereto and shall be effective as if rewritten fully herein." In addition, the Readmission Agreement contains a list of specific documents the signor acknowledged having received:

---

30, 509 P.3d 443 (stating that "for an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms" and "the terms to be incorporated generally must be clearly and expressly identified" (internal quotation marks and citation omitted)); *Walker v. BuildDirect.com Techs., Inc.*, 2015 OK 30, ¶ 11, 349 P.3d 549 (explaining that "extrinsic material is properly incorporated when the underlying contract makes clear reference to the separate document, the identity of the separate document may be ascertained beyond doubt, and the parties to the agreement had knowledge of and assented to the incorporation"); *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798 (Mo. 2015) (en banc) (stating that "the intent to incorporate must be clear," and that "[t]o incorporate terms from another document, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt" (alterations, internal quotation marks, and citation omitted)).

5. The undersigned acknowledges that, as part of Resident's initial admission, he/she received the following documents, in addition to the Admission Agreement:

- Admission Handbook, outlining the Facility's rules and regulations along with written explanations of the following:
    - ♦ Admission, Discharge and Readmission policies
    - ♦ Bed assignment, reservation, and refund policies
    - ♦ Protection of resident funds
    - ♦ Resident's rights under federal law
    - ♦ Bed hold policies
    - ♦ Policies/procedures for bringing personal items into the Facility, such as food, appliances, furniture, valuables, etc.
    - ♦ Policies for securing personal belongings, valuables and money
    - ♦ Special services available such as laundry, barbers and activities
    - ♦ Resident's right to choose their own care providers
    - ♦ Policies/procedures for filing grievances
    - ♦ Medicare/Medicaid Funding
    - ♦ Smoking policies
- Resident's rights under applicable state laws.
- Information and policies regarding Advance Directives
- Outline of Services available at the Facility and accompanying price list
- Listing of local and governmental resources/ advocacy groups
- Listing of all medical professionals available to provide on-site services
- Information and policies for the use of physical/chemical restraints, including bed rails.

As the district court correctly observed, the Readmission Agreement makes no reference to the Arbitration Agreement. The fact that the Readmission Agreement expressly identifies a number of other documents makes this omission particularly striking.

9

{14}     Defendants argue that the Readmission Agreement sufficiently incorporated the Arbitration Agreement by expressly incorporating "the original Admission Agreement, *along with each of its attachments*." Defendants appear to contend that the Arbitration Agreement was an attachment to the Admission Agreement. As an initial matter, however, neither this Court nor the district court was presented with any evidence to establish that the Arbitration Agreement was an "attachment" to the Admission Agreement—the Admission Agreement presented by Defendants as Exhibit A to their motion to compel contained no attachments at all. In support of their position, Defendants merely assert that the Arbitration Agreement was "undisputably" one of the admissions materials. Regardless, we need not delve further into that issue because we are not persuaded that a general reference to "attachments" is effective to incorporate documents outside the four corners of the Admission Agreement under the circumstances here.[3]

---

[3]Defendants raise a secondary point in the third-party beneficiary section of their brief that was not raised or developed in the incorporation by reference section of their brief—that Daughter signed both the Admission Agreement and the Arbitration Agreement on the same day, and this temporal relationship is sufficient to consider the Arbitration Agreement part of the "admission materials" referenced in the original Admission Agreement based on the principle that "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together." *See Juarez v. THI of N.M. at Sunset Villa, LLC*, 2022-NMCA-056, ¶ 18, 517 P.3d 918 (internal quotation marks and citation omitted). *Williston* refers to this principle as "implicit" incorporation by reference. 11 Lord, *supra*, § 30:26. While this principle may be effective as between parties to the contract who have notice of all of the separate documents they signed in the

10

{15} "A reference to another document must be clear and unequivocal," 17A C.J.S. *Contracts* § 419 (2025), and "incorporation by reference is ineffective to accomplish its intended purpose when the provisions to which reference is made do not have a reasonably clear and ascertainable meaning." 11 Lord, *supra*, § 30:25. In this case, there is nothing in the record that purports to identify, clearly and unequivocally, what the "attachments" are, much less that the Arbitration Agreement is one of them. As we have discussed, the only documents identified as having been received by Mother appear in paragraph five of the Readmission Agreement, and the Arbitration Agreement is not included among them. Put differently, there is nothing that would provide Mother with a reasonably clear and ascertainable meaning of what documents are "attachments." We conclude that the Readmission Agreement's general reference to "attachments" is insufficiently clear to accomplish an effective incorporation of whatever unidentified documents were, in fact, attached.

{16} Defendants also argue that even if Mother was "unaware of the preexisting Arbitration Agreement when she signed the Readmission Agreement," paragraph four of the Readmission Agreement explicitly permitted Mother to "review the original Admission Agreement and its attachments thereto *which were signed/reviewed by the undersigned* at the time of Resident's initial admission AND

course of a single transaction, Defendants have neither argued nor presented any authority to suggest that such implicit incorporation would be effective against a third party without notice of the separate documents. *See id.*

11

the undersigned may request additional copies of the same." Mother did not sign the original Admission Agreement and its attachments, there is no evidence in the record to indicate that she reviewed the Admission Agreement and its attachments at any point, and Defendants do not argue that she did so. Defendants assert instead that these documents were available to Mother, and that she had a duty to read and familiarize herself with these documents before signing the Readmission Agreement. *See Smith v. Price's Creameries*, 1982-NMSC-102, ¶ 13, 98 N.M. 541, 650 P.2d 825 ("Each party to a contract has a duty to read and familiarize [them]self with its contents before [they] sign[] and deliver[] it, and if the contract is plain and unequivocal in its terms, each is ordinarily bound thereby."). However, "[w]hile a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms . . . a party will not be bound to the terms of any document unless it is clearly identified in the agreement." *State ex rel. U-Haul Co. of W. Va.*, 752 S.E.2d at 597 (internal quotation marks and citation omitted); *see also id.* 597 n.14 (discussing an example of poor identification of a document that led the court to conclude that an arbitration clause was not properly incorporated by reference). As we have concluded that any "attachments" to the Admission Agreement were not clearly identified in the Readmission Agreement, Defendants' reliance on *Price* does not provide a basis to conclude that Mother possessed the requisite knowledge of and assented to the terms of the Arbitration Agreement.

12

**CONCLUSION**

{17}     Based on the foregoing, we affirm the district court's denial of Defendants' motion to compel arbitration and remand this matter to the district court for further proceedings in accordance with this opinion.

{18}     **IT IS SO ORDERED.**

                                            _____

                                            **MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____

**ZACHARY A. IVES, Judge**

_____

**SHAMMARA H. HENDERSON, Judge**

# APPENDIX A

<u>READMISSION AGREEMENT</u>

RESIDENT NAME: *Cheryl Smith*

RESIDENT NUMBER: ███████████

DATE OF READMISSION: 3/24/2020

THIS READMISSION AGREEMENT ("Agreement") is made this 24th day of *March 2020* by and between *Casa Maria HCC* ("Facility") AND *Cheryl Smith* ("Resident") AND/OR _____ ("Resident's Durable Power of Attorney for Health Care"/ "Resident's Legal Guardian"/ "Resident's Responsible Party", hereinafter collectively "Representative").

For the purposes of readmitting Resident to the Facility and in consideration of the mutual promises contained in this Agreement and the original Admission Agreement by and between the parties, executed by the undersigned on *1/8/2020*, the parties agree as follows:

1.  By execution of this Readmission Agreement, the parties acknowledge and reaffirm the terms of the original Admission Agreement between the parties and acknowledge that this Readmission Agreement does not replace or supercede the original Admission Agreement.

2.  The terms, conditions, and obligations of the parties as stated in the original Admission Agreement, along with each of its attachments, are incorporated in this Readmission Agreement by reference thereto and shall be effective as if rewritten fully herein.

3.  **THIS READMISSION AGREEMENT IS TO BE USED <u>ONLY</u> WHEN RESIDENT WAS AN OCCUPANT OF THE FACILITY WITHIN THE LAST THIRTY (30) DAYS, WHERE SUCH RESIDENT HAS BEEN ABSENT FROM THE FACILITY AND FOR WHICH AN ADMISSION AGREEMENT AND RELATED DOCUMENTS WERE PREVIOUSLY COMPLETED AND SIGNED.**

4.  The undersigned may review the original Admission Agreement and its attachments thereto which were signed/reviewed by the undersigned at the time of Resident's initial admission AND the undersigned may request additional copies of same.

5.  The undersigned acknowledges that, as part of Resident's initial admission, he/she received the following documents, in addition to the Admission Agreement:
    - Admission Handbook, outlining the Facility's rules and regulations along with written explanations of the following:
        - Admission, Discharge and Readmission policies
        - Bed assignment, reservation, and refund policies
        - Protection of resident funds
        - Resident's rights under federal law
        - Bed hold policies
        - Polices/procedures for bringing personal items into the Facility, such as food, appliances, furniture, valuables, etc.
        - Policies for securing personal belongings, valuables and money
        - Special services available, such as laundry, barbers and activities
        - Resident's right to choose their own care providers
        - Policies/procedures for filing grievances
        - Medicare/Medicaid Funding
        - Smoking policies

Original: Business File • Photocopy: Resident/Representative

- Resident's rights under applicable state laws.
- Information and policies regarding Advance Directives
- Outline of Services available at the Facility and accompanying price list
- Listing of local and governmental resources/ advocacy groups
- Listing of all medical professionals available to provide on-site services
- Information and policies for the use of physical/chemical restraints, including bed rails.

6. This Readmission Agreement is being provided at the convenience of the undersigned and the undersigned may request that a new admission be processed, which would entail the execution of all Facility admission forms.

7. The undersigned has been orally informed of the current ancillary prices, the current charges of the Facility's services and the Resident's rights at the Facility. Copies of all related documents have been provided herewith.

**THE UNDERSIGNED ACKNOWLEDGES THAT HE/SHE HAS READ THIS AGREEMENT AND AFFIRMS THAT HE/SHE IS EXECUTING THE INSTRUMENT VOLUNTARILY AND FREELY, WITH A FULL UNDERSTANDING AND IN AGREEMENT OF ITS TERMS.**

| | | |
|---|---|---|
| ███████████ | 3/24/2020 | *Cheryl Smith* |
| Signature of Resident | Date | Printed Name of Resident |
| ███████████ | | |
| Resident Social Security Number | | |
| | | |
| Witness Signature | Date | Printed Name of Witness |

AND/OR

| | | |
|---|---|---|
| | | |
| Signature of Representative, if any | Date | Printed Name of Representative |
| | | |
| Witness Signature | Date | Printed Name of Witness |
| | | |
| Representative Social Security No. (Voluntary Info.) | | |
| ███████████ | 3/24/2020 | *Amanda Rose* |
| Signature of Facility Official | Date | Printed Name of Facility Official & Title *(Admissions Director)* |

Original: Business File • Photocopy: Resident/Representative

FFGN001 Readmission Agreement (Rev. 6/2009)

Page 2 of 2

15